

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-14-00089-CV

_____

IN THE INTEREST OF C.A.J., A CHILD

On Appeal from the County Court at Law
Cass County, Texas
Trial Court No. CCL14TA142

Before Morriss, C.J., Moseley and Carter,* JJ.
Opinion by Justice Moseley

_____

*Jack Carter, Justice, Retired, Sitting by Assignment

O P I N I O N

Alice Jenson brought suit to terminate Larry Jenson's parental rights to C.A.J.[1]  After a bench trial, the trial court found (1) that Larry had been convicted for being criminally responsible for conduct that caused the serious injury of a child, (2) that Larry's behavior would constitute indecency with a child, (3) that Larry knowingly placed or knowingly allowed C.A.J. to remain in conditions or surroundings which endangered her physical or emotional well-being, (4) that Larry engaged in conduct or knowingly placed C.A.J. with persons who engaged in conduct which endangered her physical or emotional well-being, and (5) that termination of Larry's parental rights was in C.A.J.'s best interest.  *See* TEX. FAM. CODE ANN. § 161.001(1)(D), (E), (L)(iv), (2) (West 2014).  Accordingly, the trial court terminated Larry's parental rights to C.A.J.  On appeal, Larry argues that the evidence is legally and factually insufficient[2] to support any of the statutory grounds for termination and the trial court's finding regarding the best interest of the child.

We overrule Larry's points of error and affirm the trial court's termination of his parental rights to C.A.J.

---

[1]To protect the confidentiality of the children involved, this Court will refer to all involved adult parties by fictitious names and to all minor children with initials.  *See* TEX. R. APP. P. 9.8(b)(C)(2).

[2]Although in one portion of his brief, Larry eschews a claim of factual insufficiency, in another portion of his brief he employs arguments which would raise factual sufficiency concerns.  In the interest of justice, we discuss both legal and factual sufficiency.

## I. Sufficient Evidence Supports a Statutory Ground for Termination

### A. Standard of Review

"The natural right existing between parents and their children is of constitutional dimensions." *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). Due to the gravity of the parent-child relationship, we strictly scrutinize parental-rights termination proceedings; when construing the predicate grounds for termination of parental rights, "'involuntary termination statutes are strictly construed in favor of the parent.'" *In re S.K.A.*, 236 S.W.3d 875, 900 (Tex. App.—Texarkana 2007, pet. denied) (quoting *Holick*, 685 S.W.2d at 20). To terminate an individual's parental rights to his child, the trial court must find, by clear and convincing evidence, the existence of both of the following statutory requirements: (1) that the parent has engaged in one of the statutory grounds for termination and (2) that termination is in the child's best interest. TEX. FAM. CODE ANN. § 161.001 (West 2014); *In re E.N.C.*, 384 S.W.3d 796, 798 (Tex. 2012); *In re C.H.*, 89 S.W.3d 17, 23 (Tex. 2002). The clear and convincing burden of proof has been defined as that "measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007 (West 2014); *see C.H.*, 89 S.W.3d at 23. Due process demands this heightened standard. *E.N.C.*, 384 S.W.3d at 802 (citing *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002)).

In a legal sufficiency review, termination findings are given appropriate deference. *See In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002); *Smith v. Tex. Dep't of Protective & Regulatory Servs.*, 160 S.W.3d 673, 679 (Tex. App.—Austin 2005, no pet.). In such cases, we consider all

the evidence in the light most favorable to the findings to determine whether the fact-finder could reasonably have formed a firm belief or conviction that the grounds for termination were proven. *E.N.C.*, 384 S.W.3d at 802–03 (citing *J.F.C.*, 96 S.W.3d at 266); *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (per curiam); *In re J.L.B.*, 349 S.W.3d 836, 846 (Tex. App.—Texarkana 2011, no pet.). We assume that the fact-finder resolved disputed facts in favor of the findings if a reasonable fact-finder could do so. *E.N.C.*, 384 S.W.3d at 802–03 (citing *J.F.C.*, 96 S.W.3d at 266); *J.P.B.*, 180 S.W.3d at 573. Conversely, we disregard evidence that the fact-finder may have reasonably disbelieved or testimony from witnesses whose credibility may reasonably be doubted. *E.N.C.*, 384 S.W.3d at 802–03 (citing *J.F.C.*, 96 S.W.3d at 266); *J.P.B.*, 180 S.W.3d at 573.

The inquiry in a factual sufficiency review is whether the evidence, viewed in a neutral light, "is such that a fact-finder could reasonably form a firm belief or conviction about the truth of the . . . allegations." *C.H.*, 89 S.W.3d at 25; *J.L.B.*, 349 S.W.3d at 846. If, in weighing disputed evidence, the fact-finder could have reasonably resolved the conflicts to form a firm conviction that the allegations constituting the grounds for termination were true, then the evidence is factually sufficient, and the termination findings must be upheld. *C.H.*, 89 S.W.3d at 18–19; *see J.F.C.*, 96 S.W.3d at 266. In applying this standard in light of the clear and convincing standard, we must be careful not to "'be so rigorous that the only factfindings that could withstand review are those established beyond a reasonable doubt.'" *In re R.A.L.*, 291 S.W.3d 438, 443 (Tex. App.—Texarkana 2009, no pet.) (quoting *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (per curiam)).

"Only one predicate finding under [S]ection 161.001(1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest." *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003); *In re K.W.*, 335 S.W.3d 767, 769 (Tex. App.—Texarkana 2011, no pet.); *In re N.R.*, 101 S.W.3d 771, 775 (Tex. App.—Texarkana 2003, no pet.). "'If multiple predicate grounds are found by the trial court, we will affirm based on any one ground because only one is necessary for termination of parental rights.'" *K.W.*, 335 S.W.3d at 769 (quoting *In re D.S.*, 333 S.W.3d 379, 388 (Tex. App.—Amarillo 2011, no pet.)).

While a parent's rights to "'the companionship, care, custody, and management,'" *Santosky v. Kramer*, 455 U.S. 745, 758–59 (1982) (quoting *Stanley v. Illinois*, 405 U.S. 645, 651 (1972)), of his children are constitutional interests "far more precious than any property right," "'the rights of natural parents are not absolute; protection of the child is paramount.'" *A.V.*, 113 S.W.3d at 361 (quoting *In re J.W.T.*, 872 S.W.2d 189, 195 (Tex. 1994)); *see In re M.S.*, 115 S.W.3d 534, 547 (Tex. 2003). A child's emotional and physical interests must not be sacrificed merely to preserve parental rights. *C.H.*, 89 S.W.3d at 26.

## B. The Evidence

The record of the termination hearing demonstrated that Larry was a drug addict. He admitted to the trial court that he had abused drugs like methamphetamine and marihuana on a regular basis for most of his life. Larry's mother testified that Larry tried to quit using drugs "[v]ery many . . . times." Larry's brother testified that Larry sought help through numerous drug treatment programs, but eventually succumbed to his addiction. As a result of his drug use, Larry had been confined in state jail three times, and he also served a sentence of imprisonment

in the penitentiary. Larry, who was thirty-four years old at the time of the termination hearing, testified, "I've spent more . . . time in prison or in TDC or Texas custody from the time I've been a kid to now . . . ." While Larry was incarcerated, his daughter, C.A.J., was born to Alice. By the time Larry was released, C.A.J. was one and one-half years old.

After Larry served his prison sentence, he resumed his relationship with Alice, C.A.J., and Alice's two other children by another man, E.C. and N.C. According to the testimony of Larry and his biological mother, Larry fell in love with all of Alice's children and, once again, decided to turn his life around by refraining from illegal drug use. During a period of sobriety, Larry married Alice and became a good provider and a loving father.

At the termination hearing, Alice testified that Larry used drugs "off and on" during their relationship. She explained that she would "kick him out," but that he would "clean up and come home." However, Larry claimed that he was sober for almost five years—until an argument led to his decision to leave Alice and relapse. Even though Larry knew that his drug use was a danger to C.A.J., E.C., and N.C., Larry admitted that he used drugs towards the end of his marriage to Alice. Larry testified that after he left Alice, he started socializing with old friends who were using drugs, put himself "in the wrong places at the wrong time," had "a weak moment," and resumed his drug use.

On June 1, 2012, Alice allowed Larry to take the children on a camping trip. While the children were in his care, Larry smoked methamphetamine. That night, while he was still under the influence of illegal drugs, Larry penetrated eleven-year-old E.C.'s vagina with his fingers while she was sleeping. Alice drove to the campsite on the following morning. She testified that

Larry and his friends, who had recently arrived, were gathered in the parking lot while her three children were swimming in a lake, unsupervised by any adult. Because Alice believed that Larry's friends were using drugs, she gathered the children and drove away. Alice testified that Larry did not see the children after this camping trip and made no attempt to do so.

As of the entry of Alice and Larry's divorce decree in September 2012, E.C. had made no outcry of abuse. However, shortly after the divorce decree was entered, Larry became suicidal and purposefully overdosed on "a bunch of Valium and Soma and stuff." Referring to Larry's indecent act with E.C., Larry's brother testified that Larry "tr[ied] to commit suicide because he couldn't live with the shame of what he'd done." Larry's suicide attempt was unsuccessful. According to Alice, Larry confessed to the act of indecency with E.C. as soon as he was revived. Larry told the trial court that he was consumed with guilt and confessed his act to Alice and a few other family members because he "wanted to make sure [that E.C.] was okay mentally and physically" and "had the counseling she needed."

Alice reported Larry's confession to law enforcement officers. On December 13, 2012, pursuant to his plea of no contest, Larry was convicted of indecency with a child by contact, was sentenced to three years' imprisonment, and was returned to the penitentiary for a second time. He was still incarcerated at the time of the termination hearing. Although he confessed the act of indecency with E.C. to the trial court, Larry testified that the only time he used illegal drugs in front of the children was during the camping trip. He assured the trial court that he loved all of

Alice's children and that he was willing to do anything to prevent the termination of his parental rights to C.A.J.[3]

After hearing the evidence, the trial court terminated Larry's parental rights to C.A.J.

## C. Analysis

Larry argues that the evidence is legally and factually insufficient to support the trial court's decision to terminate his parental rights. His main argument centers on the requirements set out in Section 161.001(1)(L) of the Texas Family Code. As written, subsection L provides for termination if a parent has been convicted "'for being criminally responsible for the death or serious injury of a child' under various Penal Code sections, including a conviction for indecency with a child under Section 21.11 of the Penal Code." *In re L.S.R.*, 60 S.W.3d 376, 379 (Tex. App.—Fort Worth 2001), *pet. denied*, 92 S.W.3d 529, 530 (Tex. 2002) (per curiam) (quoting TEX. FAM. CODE ANN. § 161.001(1)(L)(iv)). Larry admits that he was previously convicted of indecency with a child (which is one of the enumerated offenses listed in subsection L), but he maintains that there was no evidence that E.C. sustained serious injury as a result of his crime. *See* TEX. FAM. CODE ANN. § 161.001(1)(L)(iv).

In support of his argument, Larry cites to a few opinions from our sister courts suggesting that subsection L requires a finding of serious injury to a child and that such a finding cannot be inferred from the mere commission or conviction of indecency with a child. *See Vidaurri v. Ensey*, 58 S.W.3d 142, 145–46 (Tex. App.—Amarillo 2011, no pet.); *see also R.F. v. Tex. Dep't of Fam. & Protective Servs.*, 390 S.W.3d 63, 73–74 (Tex. App.—El Paso 2012, no pet.); *In re*

---

[3]Larry's brother testified that Larry should not be allowed around children without supervision.

*A.L.*, 389 S.W.3d 896, 900 (Tex. App.—Houston [14th Dist.] 2012, no pet.); *but see L.S.R.*, 92 S.W.3d at 530 (disavowing "any suggestion that . . . indecency with a child, generally, does not cause serious injury"); *L.S.R.*, 60 S.W.3d at 379. Here, we take note of the facts and circumstances of Larry's conviction and will determine whether these, along with the other evidence adduced at trial, were sufficient for the trial court to make a finding under Section 161.001(1)(E) of the Texas Family Code.

Alice alleged that Larry either engaged in conduct or knowingly placed C.A.J. with persons who engaged in conduct which endangered her physical or emotional well-being. *See* TEX. FAM. CODE ANN. § 161.001(1)(E). Endanger "means more than a threat of metaphysical injury or potential ill effects of a less-than-ideal family environment." *E.N.C.*, 384 S.W.3d at 803. It "'means to expose to loss or injury.'" *In re N.S.G.*, 235 S.W.3d 358, 367 (Tex. App.—Texarkana 2007, no pet.) (quoting *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987)).

Subsection E "'refers only to the parent's conduct, as evidenced not only by the parent's acts, but also by the parent's omissions or failures to act.'" *Id.* at 366–67 (quoting *In re S.K.*, 198 S.W.3d 899, 902 (Tex. App.—Dallas 2006, pet. denied)). "'The conduct to be examined includes what the parent did both before and after the child was born.'" *Id.* at 367 (quoting *S.K.*, 198 S.W.3d at 902); *see E.N.C.*, 384 S.W.3d at 804–05. "'To be relevant, the conduct does not have to have been directed at the child, nor must actual harm result to the child from the conduct.'" *In re Z.M.*, No. 06-14-00068-CV, 2015 WL 293395, at *6 (Tex. App.—Texarkana Jan. 23, 2015, no pet. h.) (quoting *Perez v. Tex. Dep't of Protective & Regulatory Servs.*, 148

S.W.3d 427, 436 (Tex. App.—El Paso 2004, no pet.)); *see E.N.C.*, 384 S.W.3d at 803; *N.S.G.*, 235 S.W.3d at 367. "However, termination under this ground 'must be based on more than a single act or omission; a voluntary, deliberate, and conscious course of conduct by the parent is required.'" *Z.M.*, 2015 WL 293395, at *6 (quoting *Perez*, 148 S.W.3d at 436).

"'Because it exposes the child to the possibility that the parent may be impaired or imprisoned, illegal drug use may support termination under section 161.001(1)(E).'" *In re A.L.*, 06-14-00050-CV, 2014 WL 5204888, at *7 (Tex. App.—Texarkana Oct. 8, 2014, no pet.) (mem. op.) (quoting *Walker v. Tex. Dep't of Family & Protective Servs.*, 312 S.W.3d 608, 617 (Tex. App.—Houston [1st Dist.] 2009, pet. denied)). "'Drug use and its effect on a parent's life and his ability to parent may establish an endangering course of conduct.'" *J.L.B.*, 349 S.W.3d at 348 (quoting *N.S.G.*, 235 S.W.3d at 368); *see In re J.O.A.*, 283 S.W.3d 336, 345 n.4 (Tex. 2009) ("'Evidence of illegal drug use or alcohol abuse by a parent is often cited as conduct which will support an affirmative finding that the parent has engaged in a course of conduct which has the effect of endangering the child.'") (quoting *In re S.N.*, 272 S.W.3d 45, 52 (Tex. App.—Waco 2008, no pet.)).

The evidence at trial demonstrated that Larry had a long history of drug abuse and incarceration. Larry had tried to seek assistance with his addiction several times, but returned to his vice during "weak moment[s]." As a result of his addiction, Larry was incarcerated during the first one and one-half years of C.A.J.'s life. Although Larry claimed that he remained drug free while he was married to Alice, Alice testified that she kicked Larry out of the house several

10

times for using drugs.[4]  After Larry left Alice, he continued socializing with friends who were drugs users.  When C.A.J. was five years old, Larry used methamphetamine and committed a heinous crime by molesting E.C.  By committing the offense of indecency with a child while under the influence of methamphetamine, Larry demonstrated the danger of his drug addiction.  According to Alice, on the day after he molested E.C., Larry was socializing with drug users while her children swam in the lake unsupervised.  At the time of the termination hearing, Larry was incarcerated and had not seen C.A.J. for over two years.

The evidence demonstrated that Larry had a serious drug addiction and engaged in criminal behavior (including conduct that endangered children) while under the influence of illicit drugs; he also had a long history of relapses from resolutions to abstain from the use of those drugs.  Based on all of the evidence introduced in this case, we conclude that the trial court could readily have reached the necessary firm conviction or belief that Larry engaged in a course of conduct which endangered C.A.J.'s physical or emotional well-being.

## II.    Sufficient Evidence Supports the Trial Court's Best-Interest Finding

Next, Larry argues that even if there was evidence supporting one of the statutory grounds for termination, the evidence was insufficient to establish that termination of his parental rights was in C.A.J.'s best interest.

There is a strong presumption that a child's interest is best served by preserving the conservatorship of the parents; however, clear and convincing evidence to the contrary may

---

[4]In termination cases, "[w]hen there is conflicting evidence, it is the province of the trier of fact to resolve such conflicts." *Jordan v. Dossey*, 325 S.W.3d 700, 713 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 820 (Tex. 2005)).

overcome the presumption. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam); *In re K.S.*, 420 S.W.3d 852, 855 (Tex. App.—Texarkana 2014, no pet.). In deciding whether termination would be in the best interest of the child, the trial court may consider this nonexclusive list of factors:

> (A) the desires of the child; (B) the emotional and physical needs of the child now and in the future; (C) the emotional and physical danger to the child now and in the future; (D) the parental abilities of the individuals seeking custody; (E) the programs available to assist these individuals to promote the best interest of the child; (F) the plans for the child by these individuals or by the agency seeking custody; (G) the stability of the home or proposed placement; (H) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (I) any excuse for the acts or omissions of the parent.

*Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976) (citations omitted); *K.S.*, 420 S.W.3d at 855. It is unnecessary to prove all of these factors as a condition precedent to parental-rights termination. *C.H.*, 89 S.W.3d at 27. Also, evidence offered to prove grounds for termination, contact between the natural parent and child, and degree of financial support are all relevant to determining if termination is in the best interest of the child. *See C.H.*, 89 S.W.3d at 28.

In what appears to be an attempt to describe C.A.J.'s desires concerning the termination, Larry, his mother, and his brother all testified that Larry loved C.A.J. and was an active part of her life. However, a description of Larry's love for his child and the fact that he was an active part of her life does not provide us with evidence concerning the desires of the child herself. There is no other evidence of the desires of the child. Accordingly, the *Holley* factor regarding the desires of the child is neutral. *See E.N.C.*, 384 S.W.3d at 808.

12

C.A.J. was approximately seven years old at the time of the termination hearing. The emotional and physical needs of the child now and in the future are great. Due to his incarceration, Larry had no income and no suitable home and would not likely be able to meet C.A.J.'s needs. Alice testified that Larry had not paid child support in two years. "'A parent who lacks stability, income, and a home is unable to provide for a child's emotional and physical needs.'" *Z.M.*, 2015 WL 293395, at *9 (quoting *In re J.T.G.*, 14-10-00972-CV, 2012 WL 171012, at *17 (Tex. App.—Houston [14th Dist.] Jan. 9, 2012, pet. denied) (mem. op.)). We find that the second *Holley* factor weighs in favor of termination.

As to the third and fourth *Holley* factors, "'[e]vidence of past misconduct or neglect can be used to measure a parent's future conduct.'" *Id.* (quoting *In re I.R.K.-N.*, No. 10-13-00455-CV, 2014 WL 2069281, at *7 (Tex. App.—Waco May 15, 2004, pet. denied) (mem. op.) (citing *Williams v. Williams*, 150 S.W.3d 436, 451 (Tex. App.—Austin 2004, pet. denied); *Ray v. Burns*, 832 S.W.2d 431, 435 (Tex. App.—Waco 1992, no writ) ("Past is often prologue.")). Although there was evidence that although Larry had attempted (with some periodic success) to be a good father, he admitted that he smoked methamphetamine while C.A.J. was in his care. Larry's long history of drug abuse and the devastating decisions he made while under the influence established that he was a danger to C.A.J. Larry's failure to remain drug free in the past speaks volumes about his parental ability and suggests a substantial likelihood that he could be a danger to C.A.J. in the future. We find that the third and fourth *Holley* factors weigh in favor of termination.

13

Next, Larry needed to beat his drug addiction in order to promote C.A.J.'s best interests. Yet, Larry and his family testified that he had previously attended drug education classes and treatment programs without success. We find that the fifth *Holley* factor weighs in favor of termination.

Larry pled with the trial court to permit him to continue supervised visits with C.A.J. His brother testified that Larry should not be left unsupervised with children. Because Larry was incarcerated at the time of trial, there was little testimony of his plans for C.A.J. We find that the sixth and seventh *Holley* factors weigh in favor of termination.

Larry's choice to use drugs while C.A.J. was in his care, his commission of indecency with a child, and his long absences from C.A.J.'s life due to his incarceration indicated that his existing parent-child relationship with C.A.J. was not a proper one. Larry offered his drug addiction as an excuse for his acts. We find that the eighth and ninth *Holley* factors weigh in favor of termination.

Considering the *Holley* factors, and in light of all of the evidence, we find that the trial court could have reasonably formed a firm belief or conviction that termination of Larry's parental rights was in the best interest of C.A.J. Therefore, we conclude that the evidence was legally and factually sufficient to support the best-interest finding. Accordingly, we overrule Larry's legal and factual sufficiency challenges.

## III. Conclusion

We affirm the trial court's judgment.

Bailey C. Moseley
Justice

Date Submitted: February 25, 2015
Date Decided: February 27, 2015