

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-18-00042-CV

IN THE INTEREST OF D.J.C. AND J.R.C., CHILDREN

On Appeal from the County Court at Law
Hopkins County, Texas
Trial Court No. CV36948

Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Justice Burgess

# MEMORANDUM OPINION

The Texas Department of Family and Protective Services (the Department) filed a petition to terminate Elsa's parental rights to her children, Dustin and Jeffrey.[1] The trial court terminated Elsa's parental rights to both children after finding that: (1) she constructively abandoned the children, who had been in the permanent or temporary managing conservatorship of the Department for not less than six months; (2) she knowingly engaged in criminal conduct that had (a) resulted in her conviction of an offense, and (b) "confinement or imprisonment and inability to care for the child[ren] for not less than two years from the date of filing the petition"; and (3) termination of her parental rights was in the children's best interests. *See* TEX. FAM. CODE ANN. §161.001(b)(1)(N), (Q), (b)(2) (West Supp. 2018).

On appeal, Elsa argues that the evidence is legally and factually insufficient to support the trial court's findings that statutory grounds for terminating her parental rights existed.[2] We conclude that sufficient evidence supports the trial court's finding under Ground Q of Section 161.001(b)(1). Consequently, we affirm the trial court's judgment.

## I. Standard of Review

"The natural right existing between parents and their children is of constitutional dimensions." *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). Indeed, parents have a fundamental right to make decisions concerning "the care, custody, and control of their children." *Troxel v.*

---

[1]To protect the confidentiality of the children involved, this Court will refer to all involved parties by fictitious names. *See* TEX. R. APP. P. 9.8(b)(C)(2).

[2]Elsa does not contest the trial court's finding that termination of her parental rights was in the children's best interests.

*Granville*, 530 U.S. 57, 65 (2000). "Because the termination of parental rights implicates fundamental interests, a higher standard of proof—clear and convincing evidence—is required at trial." *In re A.B.*, 437 S.W.3d 498, 502 (Tex. 2014). This Court is therefore required to "engage in an exacting review of the entire record to determine if the evidence is . . . sufficient to support the termination of parental rights." *Id.* at 500. "[I]nvoluntary termination statutes are strictly construed in favor of the parent." *In re S.K.A.*, 236 S.W.3d 875, 900 (Tex. App.—Texarkana 2007, pet. denied) (quoting *Holick*, 685 S.W.2d at 20).

In order to terminate parental rights, the trial court must find, by clear and convincing evidence, that the parent has engaged in at least one statutory ground for termination and that termination is in the child's best interest. TEX. FAM. CODE ANN. § 161.001 (West Supp. 2018); *In re E.N.C.*, 384 S.W.3d 796, 798 (Tex. 2012). "Clear and convincing evidence" is that "degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007 (West 2014); *see In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009). This standard of proof necessarily affects our review of the evidence.

In our review of factual sufficiency, we give due consideration to evidence that the trial court could have reasonably found to be clear and convincing. *In re H.R.M.*, 209 S.W.3d 105, 109 (Tex. 2006) (per curiam). We consider only that evidence the fact-finder reasonably could have found to be clear and convincing and determine "whether the evidence is such that a fact[-]finder could reasonably form a firm belief or conviction about the truth of the . . . allegations." *Id.* (alteration in original) (quoting *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002)); *In re J.F.C.*, 96 S.W.3d

3

256, 264, 266 (Tex. 2002). "If, in light of the entire record, the disputed evidence that a reasonable fact[-]finder could not have credited in favor of the finding is so significant that a fact[-]finder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *J.F.C.*, 96 S.W.3d at 266. "[I]n making this determination," we must undertake "an exacting review of the entire record with a healthy regard for the constitutional interests at stake." *A.B.*, 437 S.W.3d at 503 (quoting *C.H.*, 89 S.W.3d at 26).

Despite the profound constitutional interests at stake in a proceeding to terminate parental rights, "the rights of natural parents are not absolute; protection of the child is paramount." *In re A.V.*, 113 S.W.3d 355, 361 (Tex. 2003) (quoting *In re J.W.T.*, 872 S.W.2d 189, 195 (Tex. 1994)); *see In re M.S.*, 115 S.W.3d 534, 547 (Tex. 2003). "A child's emotional and physical interests must not be sacrificed merely to preserve parental rights." *In re C.A.J.*, 459 S.W.3d 175, 179 (Tex. App.—Texarkana 2015, no pet.) (citing *C.H.*, 89 S.W.3d at 26).

"Only one predicate finding under Section 161.001[b](1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest." *In re O.R.F.*, 417 S.W.3d 24, 37 (Tex. App.—Texarkana 2013, pet. denied) (quoting *A.V.*, 113 S.W.3d at 362); *In re K.W.*, 335 S.W.3d 767, 769 (Tex. App.—Texarkana 2011, no pet.)); *see In re N.R.*, 101 S.W.3d 771, 775 (Tex. App.—Texarkana 2003, no pet.). Here, we determine whether the evidence is legally and factually sufficient to support the trial court's Ground Q finding.

## II.     Factual and Procedural History

John Watkins, the program director for Child Protective Services (CPS), testified that CPS began its initial investigation of Elsa in 2016 on receipt of reports of domestic violence and drug

trade occurring in Elsa's home. Dustin and Jeffrey were removed from the home after Jeffrey tested positive for methamphetamine. According to Watkins, Elsa "was resistant to working with the Department." On April 11, 2016, the Department filed an original petition seeking termination of Elsa's parental rights. As a result of Jeffrey's positive drug test, Elsa was also arrested on April 20, 2016, for abandoning or endangering a child. Patricia Skelton, a CPS Conservatorship Supervisor, testified that Dustin and Jeffrey were placed in residential treatment centers.[3] Elsa remained in confinement until June 1, 2016. She was placed on deferred adjudication community supervision for abandoning or endangering a child.

Elsa signed a family service plan on May 4, 2016, while she was still confined. However, Skelton testified that Elsa was unable to complete the plan due to her incarceration. Elsa did complete a Substance Abuse Felony Punishment Facility program, but Watkins testified that she was arrested for a drug-related offense. The record demonstrates that Elsa was confined from March 6 to March 28, 2017, and again from April 20 to August 8, 2017. On May 5, 2017, the trial court granted the Department permanent managing conservatorship of Dustin and Jeffrey, named Elsa as the children's possessory conservator, and awarded her "possession and access at the recommendation of the children's therapist and with the approval of the guardian ad litem." Skelton testified that the Department offered Elsa another service plan, which she was unable to complete.

---

[3]The trial court entered temporary orders on May 2, 2016, which gave the Department temporary managing conservatorship of the children and Elsa temporary possessory conservatorship.

After her August 8 release from confinement, Elsa tested positive for methamphetamine on September 27, 2017. On October 16, 2017, the Department filed a motion to modify the trial court's May 5, 2016, order by seeking termination of Elsa's parental rights. Holly Mizer, a CPS conservatorship worker, testified that Elsa missed her October visitation with Dustin and Jeffrey because she did not have transportation, but visited with the children by telephone. Mizer testified that Elsa skipped her second visitation and that subsequent visits were suspended on October 25 as a result of another positive drug test. Mizer further stated that Elsa missed scheduled meetings with her, did not send cards or letters to Dustin or Jeffrey, had not maintained regular contact with them, and had not visited the children in "well over a year plus."

On November 8, 2017, Elsa was arrested for manufacture or delivery of a controlled substance in penalty group 1 in an amount of one gram or more, but less than four grams, which is a second-degree felony. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112(c) (West 2017). As of November 20, the Department had provided Elsa with another family service plan, which she did not complete. Elsa was again arrested and confined from January 16, 2018, through and beyond the date of trial.

On March 21, 2018, Elsa pled guilty to and was convicted of the second-degree felony offense of manufacture or delivery of a controlled substance and was sentenced to two years' imprisonment. On the same date, she was adjudicated guilty for abandoning or endangering a child and was sentenced to twelve months' confinement.[4] The trial court issued a bench warrant that allowed Elsa to testify at the final hearing. She stated that she loved her children, who were

---

[4]Both sentences ran concurrently, and Elsa received credit for time served.

currently placed in a foster home, and prayed for a second chance at motherhood. Elsa, who Mizer testified was unemployed without transportation before her last arrest, offered no evidence on how she planned to care for Dustin and Jeffrey if they were retuned to her after she served her sentence of imprisonment. On the issue of her release date, Elsa testified, "I'm already up for parole," and she stated that she was "just waiting on an answer."

After hearing this evidence, the trial court terminated Elsa's parental rights to Dustin and Jeffrey.

## III. Sufficient Evidence Supported the Ground Q Finding

Ground Q provides a statutory ground for terminating parental rights if the Department proves that a parent:

knowingly engaged in criminal conduct that has resulted in the parent's:

   (i)   conviction of an offense; and

   (ii)   confinement or imprisonment and inability to care for the child for not less than two years from the date of filing the petition.

TEX. FAM. CODE ANN. § 161.001(b)(1)(Q).

Elsa's first argument related to Ground Q argues that the evidence was legally and factually insufficient to support the statutory finding because the offenses and convictions both occurred after the April 11, 2016, petition was filed. In other words, she contends that Ground Q cannot be applied prospectively.[5]  However, the Texas Supreme Court has expressly rejected this argument.

---

[5]We note that Elsa's briefing wholly fails to mention that the Department moved to modify the trial court's May 5, 2017, order and again moved to terminate her parental rights based on Ground Q. "The [appellant's] brief must . . . state concisely . . . the facts pertinent to the issues or points presented." TEX. R. APP. P. 38.1(g).

In examining Ground Q, the Court held that "the phrase 'two years from the date of filing the petition' reasonably indicates, consistent with the common usage of the word 'from,' a prospective reading." *A.V.*, 113 S.W.3d at 360 (quoting TEX. FAM. CODE ANN. § 161.001(b)(1)(Q)). The court reasoned, "A prospective reading of subsection Q allows the State to act in anticipation of a parent's abandonment of the child and not just in response to it." *Id.* "Thus, if the parent is convicted and sentenced to serve at least two years and will be unable to provide for his or her child during that time, the State may use subsection Q to ensure that the child will not be neglected." *Id.* That is precisely the situation before us since Elsa received a two-year sentence and does not address in her brief the finding that she could not provide for the children during that time.[6]

Yet, in her second argument related to Ground Q, Elsa contends that, because she received exactly a two-year sentence, there was no evidence that she "actually served AT LEAST a two year sentence." The Texas Supreme Court has "recognize[d] that a two-year sentence does not automatically meet subsection Q's two-year imprisonment requirement" since "[a] parent . . . might well be paroled within two years." *In re H.R.M.*, 209 S.W.3d 105, 108–09 (Tex. 2006)

---

[6]"Imprisonment alone is insufficient to justify termination of the parent-child relationship." *In re J.P.H.*, 196 S.W.3d 289, 294 (Tex. App.—Eastland 2006, no pet.) (citing *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987)). "Subsection Q recognizes this by requiring both a two-year incarceration and proof of the parent's inability to care for the child while incarcerated." *Id.* Here, the evidence demonstrated that Elsa was unemployed, on drugs, and had no transportation during the pendency of the case. Skelton's and Mizer's testimony further established that Elsa did not maintain regular contact with the children and was never able to complete any of the family service plans required by the Department to ensure their safe return. Elsa offered no evidence to rebut this testimony, which we find was legally and factually sufficient to support the trial court's conclusion that Elsa was unable to provide for Dustin and Jeffrey.

(per curiam). Here, Elsa testified that she was "up for parole" and was "just waiting on an answer."

As the Texas Supreme Court has noted, "[E]vidence of the availability of parole is relevant to determine whether the parent will be released within two years." *Id.* at 108. However, "[m]ere introduction of parole-related evidence . . . does not prevent a fact[-]finder from forming a firm conviction or belief that the parent will remain incarcerated for at least two years." *Id.* In explaining its reasoning, the court wrote:

> Parole decisions are inherently speculative, and while all inmates doubtless hope for early release and can take positive steps to improve their odds, the decision rests entirely within the parole board's discretion. If the mere possibility of parole prevents a jury from ever forming a firm belief or conviction that a parent will remain incarcerated for at least two years, then termination under [Ground] Q will occur only when the parent has no possibility of parole. By that rationale, the party seeking termination would have to show that there is zero chance of early release. This would impermissibly elevate the burden of proof from clear and convincing to beyond a reasonable doubt.

*Id.* (citations omitted).

The only evidence on the issue of parole was Elsa's previously recited testimony. "Because the fact-finder is the sole arbiter when assessing the demeanor and credibility of a witness, it is free to disregard the testimony regarding the probability of parole, 'which is barely more than conjecture,' especially when the record shows multiple convictions." *In re T.E.*, No. 06-11-00048-CV, 2011 WL 5865712, at *2 (Tex. App.—Texarkana Nov. 23, 2011, no pet.) (mem. op.) (quoting *H.R.M.*, 209 S.W.3d at 109).

Because we find the evidence legally and factually sufficient to support the trial court's Ground Q finding, we overrule Elsa's point of error.

9

## IV.    Conclusion

We affirm the trial court's judgment.

Ralph K. Burgess
Justice

Date Submitted:     October 11, 2018
Date Decided:       October 12, 2018