

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-22-00091-CV

IN THE INTEREST OF R.L.K., A CHILD

On Appeal from the 76th District Court
Camp County, Texas
Trial Court No. CPS-21-03740

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Justice Rambin

## MEMORANDUM OPINION

After Mother tested positive for amphetamine, methamphetamine, and marihuana at the birth of R.L.K., he was removed from her care. Over one year after R.L.K. was removed,[1] the trial court determined that termination of Mother's parental rights was in the best interest of R.L.K.[2] and terminated those rights on three grounds set out in Section 161.001(b)(1)(E), (O), and (P) of the Texas Family Code. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(E), (O), (P). On appeal, Mother asserts that the evidence is legally and factually insufficient to support the trial court's findings on the statutory grounds and that the evidence is legally and factually insufficient to support its finding that termination of her parental rights was in the child's best interest. Because we find that sufficient evidence supports the trial court's finding under statutory ground E and its finding on the child's best interest, we will affirm the trial court's judgment.

## I.     Standard of Review

"The natural right existing between parents and their children is of constitutional dimensions." *In re E.J.Z.*, 547 S.W.3d 339, 343 (Tex. App.—Texarkana 2018, no pet.) (quoting *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985)). "Indeed, parents have a fundamental right to make decisions concerning 'the care, custody, and control of their children.'" *Id.* (quoting *Troxel v. Granville*, 530 U.S. 57, 65 (2000)). "Because the termination of parental rights implicates

---

[1] The trial court extended the case and retained it on its docket prior to the first anniversary of its temporary order appointing the Department as temporary managing conservator of R.L.K. *See* TEX. FAM. CODE ANN. § 263.401(a), (b) (Supp).

[2] *See* TEX. FAM. CODE ANN. § 161.001(b)(2).

fundamental interests, a higher standard of proof—clear and convincing evidence—is required at trial." *Id.* (quoting *In re A.B.*, 437 S.W.3d 498, 502 (Tex. 2014)). "This Court is therefore required to 'engage in an exacting review of the entire record to determine if the evidence is . . . sufficient to support the termination of parental rights.'" *Id.* (quoting *In re A.B.*, 437 S.W.3d at 500). "[I]nvoluntary termination statutes are strictly construed in favor of the parent." *Id.* (alteration in original) (quoting *In re S.K.A.*, 236 S.W.3d 875, 900 (Tex. App.—Texarkana 2007, pet. denied).

"In order to terminate parental rights, the trial court must find, by clear and convincing evidence, that the parent has engaged in at least one statutory ground for termination and that termination is in the child's best interest." *Id.* (citing TEX. FAM. CODE ANN. § 161.001; *In re E.N.C.*, 384 S.W.3d 796, 798 (Tex. 2012)). "'Clear and convincing evidence' is that 'degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established.'" *Id.* (quoting TEX. FAM. CODE ANN. § 101.007) (citing *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009)). "This standard of proof necessarily affects our review of the evidence." *Id.*

"In our legal sufficiency review, we consider all the evidence in the light most favorable to the findings to determine whether the fact-finder reasonably could have formed a firm belief or conviction that the grounds for termination were proven." *In re L.E.S.*, 471 S.W.3d 915, 920 (Tex. App.—Texarkana 2015, no pet.) (citing *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (per curiam); *In re J.L.B.*, 349 S.W.3d 836, 846 (Tex. App.—Texarkana 2011, no pet.)). "We assume the trial court, acting as fact-finder, resolved disputed facts in favor of the finding, if a

3

reasonable fact-finder could do so, and disregarded evidence that the fact-finder could have reasonably disbelieved or the credibility of which reasonably could be doubted." *Id.* (citing *In re J.P.B.*, 180 S.W.3d at 573).

"In our review of factual sufficiency, we give due consideration to evidence the trial court could have reasonably found to be clear and convincing." *Id.* (citing *In re H.R.M.*, 209 S.W.3d 105, 109 (Tex. 2006) (per curiam)). "We consider only that evidence the fact-finder reasonably could have found to be clear and convincing and determine 'whether the evidence is such that a fact[-]finder could reasonably form a firm belief or conviction about the truth of the . . . allegations.'" *Id.* (alteration in original) (quoting *In re H.R.M.*, 209 S.W.3d at 108). "If, in light of the entire record, the disputed evidence that a reasonable fact[-]finder could not have credited in favor of the finding is so significant that a fact[-]finder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id.* (quoting *In re J.F.C.*, 96 S.W.3d at 266) (Tex. 2002). "'[I]n making this determination,' we must undertake 'an exacting review of the entire record with a healthy regard for the constitutional interests at stake.'" *Id.* (alteration in original) (quoting *In re A.B.*, 437 S.W.3d 498, 503 (Tex. 2014)). "We also recognize that the trial court, as the fact-finder, is the sole arbiter of a witness' demeanor and credibility, and it may believe all, part, or none of a witness' testimony." *In re A.M.*, No. 06-18-00012-CV, 2018 WL 3077784, at *3 (Tex. App.—Texarkana June 22, 2018, pet. denied) (mem. op.) (citing *In re H.R.M.*, 209 S.W.3d at 109).

"Despite the profound constitutional interests at stake in a proceeding to terminate parental rights, '"the rights of natural parents are not absolute; protection of the child is

4

paramount."'" *In re L.E.S.*, 471 S.W.3d at 920 (quoting *In re A.V.*, 113 S.W.3d 355, 361 (Tex. 2003)). "A child's emotional and physical interests must not be sacrificed merely to preserve parental rights." *Id.* (quoting *In re C.A.J.*, 459 S.W.3d 175, 179 (Tex. App.—Texarkana 2015, no pet.)).

## II. Sufficient Evidence Supported the Trial Court's Statutory Ground E Finding

### A. Statutory Ground E Requirements

Mother asserts that the evidence is legally and factually insufficient to support the trial court's findings under grounds E, O, and P. "Only one predicate finding under Section 161.001[b](1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest." *Id.* at 923 (quoting *In re O.R.F.*, 417 S.W.3d 24, 37 (Tex. App.—Texarkana 2013, pet. denied)). "Even so, when the trial court[']s findings under grounds D or E are challenged on appeal, due process demands that we review the evidence supporting the findings under at least one of those grounds when they are challenged on appeal." *In re S.A.W.*, No. 06-21-00116-CV, 2022 WL 1193667, at *3 (Tex. App.—Texarkana Apr. 22, 2022, pet. denied) (mem. op.) (citing *In re N.G.*, 577 S.W.3d 230, 237 (Tex. 2019) (per curiam) ("We hold that due process and due course of law requirements mandate that an appellate court detail its analysis for an appeal of termination of parental rights under Section 161.001(b)(1)(D) or (E) of the Family Code.")). "This is because termination of parental rights under these grounds may implicate the parent's parental rights to other children." *Id.* (citing *In re N.G.*, 577 S.W.3d at 234; TEX. FAM. CODE ANN. § 161.001(b)(1)(M) ("providing as a ground for termination of parental rights that the parent 'had his or her parent-child relationship terminated

with respect to another child based on a finding that the parent's conduct was in violation of Paragraph (D) or (E)'").

Under statutory ground E, parental rights may be terminated "if the court finds by clear and convincing evidence . . . that the parent has . . . engaged in conduct . . . . which endangers the physical or emotional well-being of the child." TEX. FAM. CODE ANN. § 161.001(b)(1)(E). "'[E]ndanger' means to expose to loss or injury; to jeopardize." *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987); *In re L.E.S.*, 471 S.W.3d at 923; *In re N.S.G.*, 235 S.W.3d 358, 367 (Tex. App.—Texarkana 2007, no pet.). "It is not necessary that the conduct be directed at the child or that the child actually suffer injury." *In re L.E.S.*, 471 S.W.3d at 923. "Under subsection (E), it is sufficient that the child's well-being is jeopardized or exposed to loss or injury." *Id.* (citing *Boyd*, 727 S.W.2d at 533; *In re N.S.G.*, 235 S.W.3d at 367). Nevertheless, endanger "means more than a threat of metaphysical injury or potential ill effects of a less-than-ideal family environment." *In re E.N.C.*, 384 S.W.3d 796, 803 (Tex. 2012). "Further, termination under subsection (E) must be based on more than a single act or omission. Instead, a 'voluntary, deliberate, and conscious course of conduct by the parent is required.'" *In re L.E.S.*, 471 S.W.3d at 923 (quoting *Perez v. Tex. Dep't of Protective & Regul. Servs.*, 148 S.W.3d 427, 436 (Tex. App.—El Paso 2004, no pet.); *see Boyd*, 727 S.W.2d at 533; *In re N.S.G.*, 235 S.W.3d at 366–67.

"Ground E refers only to the parent's conduct, as evidenced not only by the parent's acts, but also by the parent's omissions or failures to act." *In re N.S.G.*, 235 S.W.3d at 366–67 (quoting *In re S.K.*, 198 S.W.3d 899, 902 (Tex. App.—Dallas 2006, pet. denied)). "The conduct

6

to be examined includes what the parent did both before and after the child was born." *Id.* at 367 (quoting *In re S.K.*, 198 S.W.3d at 902). "The endangering conduct may also occur 'either before or after the child's removal by the Department.'" *In re S.A.W.*, 2022 WL 1193667, at *4 (quoting *In re Z.J.*, No. 02-19-00118-CV, 2019 WL 6205252, at *11 (Tex. App.—Fort Worth Nov. 21, 2019, pet. denied) (mem. op.)).

"[C]onduct that subjects a child to a life of uncertainty and instability endangers the physical and emotional well-being of a child. Drug use and its effect on a parent's life and h[er] ability to parent may establish an endangering course of conduct." *In re N.S.G.*, 235 S.W.3d at 367–68 (first alteration in original) (quoting *In re A.J.H.*, 205 S.W.3d 79, 81 (Tex. App.—Fort Worth 2006, no pet.)). "Because it exposes the child to the possibility that the parent may be impaired or imprisoned, illegal drug use may support termination under' [statutory] Ground E." *In re H.M.J.*, No. 06-18-00009-CV, 2018 WL 3028980, at *5 (Tex. App.—Texarkana June 19, 2018, no pet.) (mem. op.) (quoting *In re A.L.*, No. 06-14-00050-CV, 2014 WL 5204888, at *7 (Tex. App.—Texarkana Oct. 8, 2014, no pet.) (mem. op.)). In addition, a parent's inability to provide stable housing and to adequately provide for a child may support a finding of endangerment under statutory ground E. *See In re S.I.H.*, No. 02-11-00489-CV, 2012 WL 858643, at *5 (Tex. App.—Fort Worth March 15, 2012, no pet.) (mem. op.). Under statutory ground E, "a parent's failure to complete relevant requirements of her service plan" is a relevant consideration. *In re S.A.W.*, 2022 WL 1193667, at *4 (citing *In re Z.J.*, 2019 WL 6205252, at *11; *In re U.H.R.*, No. 07-18-00318-CV, 2019 WL 81874, at *5 (Tex. App.—Amarillo Jan. 2, 2019, no pet.) (mem. op.))).

## B.     Evidence at Trial

The evidence relevant to the trial court's statutory ground E finding showed that R.L.K. was removed from Mother's care after she tested positive for amphetamine, methamphetamine, and marihuana at R.L.K.'s birth in September 2021. A service plan was prepared by the Department and provided to Mother. Although Mother denied that anyone from the Department went over the service plan with her, she admitted that she signed the plan, reviewed it, understood what she was required to do under the plan, and memorized it. The service plan was also made an order of the Court.[3]

Mother's initial caseworker, Shannon Earles, testified that Mother was required to submit to random drug tests throughout the case but that she failed to do so. Specifically, she testified that Mother did not submit to requested drug tests in December 2021 and January and April 2022 and that she had not submitted to any drug tests since March 2022.[4] Earles testified, and Mother admitted, that Mother's drug test from March 31, 2022, showed positive results for amphetamine, methamphetamine, and marihuana. Mother also testified that one of the drug tests showed that she "was dirty for heroin, hydrocodone, whatever else." Mother claimed that the results of those tests were inaccurate, as were four tests in September, two tests in November 2021, and a test in February 2022, all of which showed positive results for those drugs.

---

[3]In addition to ordering Mother to comply with each requirement contained in the service plan, the trial court ordered Mother to submit to and cooperate in an assessment of drug and alcohol dependency and to submit to random drug tests.

[4]The final hearing occurred on November 10, 2022.

8

Nevertheless, Mother admitted that she continued to use marihuana but maintained that she had a prescription from a doctor in Maine, where Mother lived.[5]

Earles also testified that Mother was required to stay in contact with the Department but that she had lost contact with Mother in April. Starsha Grant, who was Mother's caseworker beginning in September 2022, testified that she attempted to contact Mother at her email address and telephone number on file but was unsuccessful. She also testified that Mother had not contacted her and that Mother had not provided any certificates of completion of any services under the service plan. Mother testified that she stopped talking to Earles after the March drug test. She explained that she was "not going to speak to somebody who . . . [was] not doing her job and [that was] not going to make [her] finish the thing." Mother also acknowledged that she had Earles's telephone number and the Department's email address.

The evidence also showed that Mother was required to show a stable home and the ability to provide for her family. Earles testified that Mother sent her two checks in December that contained the name and address of her purported employer but that she was not able to contact the company to verify Mother's employment. She also testified that Mother did not send her any information regarding her residence. Mother testified that she was employed as a graphic designer and earned between $1,500.00 and $3,500.00 per month. She identified the name of her employer in Maine but gave conflicting testimony as to where it was located. She also

---

[5]Mother moved to Maine in November 2021.

maintained that she sent Earles a copy of her rent-to-own lease for a trailer and that she asked Earles to have a child protective services worker in Maine inspect it.[6]

The evidence also showed that counseling was required under the service plan. Earles testified that Mother attended a few sessions but then missed some sessions, was discharged, and failed to complete the counseling. Mother testified that she attended three or four sessions and that "[t]hey went great." Then Mother found out that the counselor had worked with Earles for twelve years, and Mother felt like the counselor was not doing her duty. Mother also maintained that the counseling stopped because she was indicted for child endangerment, criminal neglect, and abandonment. Nevertheless, Mother also testified that her attorney contacted the counselor a few months before the final hearing to begin counseling again. After an exchange of emails, the counselor agreed to meet with Mother after her court date in early September 2022. However, Mother was not able to meet with the counselor because, according to Mother, the counselor did not send her a Zoom link for the meeting. Mother also testified that she called and sent texts to the counselor numerous times after that but never heard from her.

Although Mother completed a psychological evaluation required by the service plan, she failed to follow through with the treatment for her mental health needs recommended by the evaluation. Earles testified that the Department requested that Mother go to Lakes Regional for that treatment on February 22 but that she did not go. She explained that Mother would have to follow the recommendation, be on medication, and go every month to complete the service. Earles testified that, if Lakes Regional would not provide the service, the Department would find

_____

[6]Although Mother claimed to have emails that showed Earles received a copy of the lease, copies of the emails were not offered into evidence.

other mental health services for her. She instructed Mother that she needed to call Lakes Regional for an appointment for six days in a row. Earles did not know if Mother did that because she had not heard about it. Mother maintained that she called Lakes Regional every day for three weeks and was told that Earles needed to make a referral, but that Earles never made one.

Earles testified that Mother also failed to submit to the court-ordered drug and alcohol dependency assessment at the East Texas Council on Alcoholism and Drug Abuse (ETCADA). Although Mother maintained that she had completed that assessment, she also testified that ETCADA also recommended treatment at Lakes Regional.

Earles also testified that Mother initially visited R.L.K. every week but that her last visit occurred on November 2, 2021. She opined that, since R.L.K. had been removed as a newborn,[7] and because the visits were for a short period of time, Mother and R.L.K. did not have a chance to bond. Earles also testified that Mother relocated to Maine in November, came back one month later, and scheduled a visit but did not come to it. Mother also did not attend a scheduled visit in January. Earles testified that Mother had not contacted her to see R.L.K. since April 2022. Mother maintained that, after relocating to Maine, she returned every week to visit R.L.K. but that Earles made her take a drug test every time. She asserted that, many times after she took the test, she was told that she was "dirty" and was not allowed to visit R.L.K.

---

[7]R.L.K. was placed with his foster family when he was a few days old.

### C. Analysis

A parent's conduct endangers the physical and emotional well-being of a child when it exposes him to a life of uncertainty and instability. *In re N.S.G.*, 235 S.W.3d at 367–68. A parent's continued use of illegal drugs can be an endangering course of conduct because of its effect on the ability to parent and because it may result in impairment or imprisonment. *Id.* at 368; *In re H.M.J.*, 2018 WL 3028980, at *5. In this case, R.L.K. was removed because Mother tested positive for amphetamine, methamphetamine, and marihuana when he was born. The trial court could reasonably infer that Mother used those drugs during her pregnancy and endangered R.L.K.'s physical well-being by exposing him to the drugs in utero. Also, Mother's use of the drugs while pregnant could result in her imprisonment since, according to Mother, she was under indictment at the time of trial for child endangerment, criminal neglect, and abandonment. In spite of that indictment, the evidence showed that Mother continued to use amphetamine, methamphetamine, and marihuana, at least through March 2022. Although Mother maintained that she did not use amphetamine and methamphetamine, the trial court, as fact-finder, could choose not to believe her testimony in light of her positive drug tests. Further, because Mother failed to submit to any drug tests from April 2022 through the final hearing, the trial court could reasonably infer that Mother continued to use those drugs. Because the use and possession of those drugs is illegal in Texas, Mother's course of conduct could result in her imprisonment, which endangered R.L.K.'s emotional and physical well-being by exposing him to a life of instability. In addition, Mother failed to address the issues caused by her use of those drugs when she failed to participate in the recommended treatment plan, as ordered by the trial court.

12

Mother's use of those drugs while pregnant endangered R.L.K., and her continued use of the drugs after R.L.K.'s removal, along with her failure to address that conduct through the available treatment services, shows that she engaged in a voluntary, deliberate, and conscious course of conduct and omissions that endangered R.L.K.'s physical and emotional well-being. *See In re L.E.S.*, 471 S.W.3d at 923.

When a parent fails, or is unable, to provide stable housing and provide for her child's support, the child is exposed to a life of uncertainty and instability. *In re S.I.H.*, 2012 WL 858643, at *5. Although Mother claimed that she worked as a graphic designer and earned between $1,500.00 and $3,500.00 per month, Earles testified that Mother only provided her with two check stubs in December and that she was not able to verify Mother's employment. From this evidence, even if the trial court believed that Mother worked during December, it could reasonably infer that she did not maintain that employment thereafter. Mother also testified that she had a lease on a trailer and that she provided a copy of the lease to Earles. However, there was no testimony or evidence that showed Mother's claimed housing would be appropriate and safe for a child. Earles denied that she received any information regarding Mother's housing.

Because the trial court, as fact-finder, is the sole judge of a witness' credibility, it may determine how much of the witness' testimony it believes, if any. *In re A.M.*, 2018 WL 3077784, at *3. For that reason, the trial court could reasonably conclude that Mother failed to obtain appropriate, stable housing and failed to secure an adequate income to support R.L.K. Because Mother failed to do so for over one year, this also shows a voluntary, deliberate, and conscious course of conduct and omissions that endangered R.L.K.

13

Based on this record, we find that legally and factually sufficient evidence supported the trial court's finding under statutory ground E. Since there was sufficient evidence supporting the trial court's finding under ground E, we need not review its findings under grounds O and P. *In re L.E.S.*, 471 S.W.3d at 923. We overrule this issue.

## III. Sufficient Evidence Supported the Trial Court's Best-Interest Finding

Mother also challenges the factual and legal sufficiency of the evidence supporting the trial court's finding that termination of her parental rights was in the best interest of R.L.K. Mother argues that there was little, if any, evidence of what was specifically in R.L.K.'s best interest and that, therefore, the trial court erred in its best-interest finding. Although Mother asserts that there was no evidence regarding most of the factors that are to be considered in determining the best interest of the child, *see Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976), she overlooks how the evidence of Mother's endangering conduct impacts those factors.

### A. Standard of Review

As discussed above, termination of parental rights requires that the trial court find, by clear and convincing evidence, that termination is in the best interest of the child. *In re E.J.Z.*, 547 S.W.3d at 343. In determining the best interests of the child, courts consider the following *Holley* factors:

> (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals, (6) the plans for the child by these individuals, (7) the stability of the home, (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent.

14

*In re N.L.D.*, 412 S.W.3d 810, 818–19 (Tex. App.—Texarkana 2013, no pet.) (citing *Holley*, 544 S.W.2d at 371–72); *see In re E.N.C.*, 384 S.W.3d at 807; *see also* TEX. FAM. CODE ANN. § 263.307(b). These factors are not exhaustive, and there is no requirement that all of them be proved to terminate parental rights. *In re C.H.*, 89 S.W.3d at 27. "In certain cases, evidence relating to one factor may be adequate to support a finding that termination is in the best interest of the child." *In re J.R.H.*, No. 06-18-00052-CV, 2018 WL 6625886, at *6 (Tex. App.—Texarkana Dec. 19, 2018, pet. denied) (mem. op.) (citing *In re B.H.R.*, 535 S.W.3d 114, 123 (Tex. App.—Texarkana Nov. 7, 2017, no pet.)). Further, we may consider evidence used to support the grounds for termination of parental rights in the best-interest analysis. *In re C.H.*, 89 S.W.3d at 28.

"Despite the profound constitutional interests at stake in a proceeding to terminate parental rights, "'the rights of natural parents are not absolute; protection of the child is paramount.'"" *In re L.E.S.*, 471 S.W.3d at 920 (quoting *In re A.V.*, 113 S.W.3d 355, 361 (Tex. 2003). "A child's emotional and physical interests must not be sacrificed merely to preserve parental rights." *Id.* (quoting *In re C.A.J.*, 459 S.W.3d 175, 179 (Tex. App.—Texarkana 2015, no pet.)).

### B.    Analysis

R.K.L. was fourteen months old at the time of trial and was too young to verbalize his desires. Earles opined that R.L.K was not bonded with Mother because he was less than two months old when Mother last visited him. However, as Mother points out in her brief, there was no factual evidence regarding the relationship between R.L.K. and his placement family,

15

although Earles opined that he was bonded and comfortable with his foster family. This factor weighs neither for nor against termination of Mother's parental rights.

Mother's (1) continued use of amphetamine, methamphetamine, and marihuana, (2) her failure to complete treatment and counseling to address the issues that lead to R.L.K.'s removal, (3) her failure to show she could provide a safe and stable home for R.L.K., and (4) her failure to show that she had sufficient income to provide for R.L.K's needs showed that her acts and omissions continued to endanger R.L.K. both at the time of trial and in the future. This evidence also demonstrated that Mother lacked the ability to provide for the emotional and physical needs of R.L.K. at the time of trial and in the future. *See In re Z.M.*, 456 S.W.3d 677, 689 (Tex. App.—Texarkana 2015, no pet.) ("A parent who lacks stability, income, and a home is unable to provide for a child's emotional and physical needs.") (quoting *In re J.T.G.*, No. 14-10-00972-CV, 2012 WL 171012, at *17 (Tex. App.—Houston [14th Dist.] Jan. 19, 2012, pet. denied) (mem. op.))). In addition, this evidence, coupled with Mother's failure to complete her service plan and her failure to visit R.L.K. for over one year, indicated that Mother lacked parental abilities and that her parent-child relationship with R.L.K. was not a proper one. *See In re B.L.H.*, 609 S.W.3d 271, 281 (Tex. App.—Texarkana 2020, pet. denied) (parent's "failure to complete the family service plan, use of drugs during the pendency of the case, and absence from several visitation opportunities demonstrated a lack of parental abilities and showed that her relationship with [her child] was not proper"). For those reasons, we find that the second, third, fourth, seventh, and eighth *Holley* factors weigh heavily in favor of termination.

16

Also, Earle testified that R.L.K.'s foster family was willing to adopt him. Although Mother testified that she was living in a trailer, she did not testify that she had made any provision for R.L.K. to reside with her, did not show that she was able to provide for R.L.K., and did not testify about her plans for R.L.K. in the future. We find that the sixth factor also weighs in favor of termination.

Based on this record, a fact-finder reasonably could have formed a firm belief or conviction that termination of Mother's parental rights was in R.L.K.'s best interest. As a result, we find that factually and legally sufficient evidence supported the trial court's best-interest finding. We overrule this issue.

## IV. Disposition

Because sufficient evidence supported at least one statutory ground finding and the best-interest finding, we affirm the trial court's judgment.

Jeff Rambin
Justice

Date Submitted:    June 7, 2023
Date Decided:    June 8, 2023

17