

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-18-00109-CV

IN THE INTEREST OF K.A.M.C., A CHILD

On Appeal from the 354th District Court
Hunt County, Texas
Trial Court No. 85696

Before Morriss, C.J., Burgess and Stevens, JJ.
Memorandum Opinion by Justice Stevens

MEMORANDUM OPINION

Following a bench trial, Father's parental rights to K.A.M.C.[1] were terminated pursuant to grounds (N) and (O) of Section 161.001(b)(1) of the Texas Family Code. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(N), (O) (West Supp. 2018). In this accelerated appeal, Father complains that the evidence was legally and factually insufficient to support the trial court's finding that termination of his parental rights was in K.A.M.C.'s best interest.[2] Because sufficient evidence supports the best-interest finding, we affirm the trial court's order.

## I.    Factual and Procedural Background

At the time of trial, ten-month-old K.A.M.C. had been in the care of the Texas Department of Family and Protective Services (the Department) for nine of those ten months. She was removed from the home of her biological parents pursuant to an Emergency Child Intake referral soon after her birth due to certain issues relating to muscle strength and development. Lee Ann Walston, a conservatorship worker with the Department, testified that K.A.M.C. had received physical therapy for her neck muscles and continued to receive physical therapy due to other delays in normal development.

---

[1] In this opinion, we refer to the child by initials and to the parents as Father and Mother to protect the child's identity. *See* TEX. R. APP. P. 9.8. Although Mother's parental rights to K.A.M.C. were likewise terminated, this appeal only involves the termination of Father's parental rights.

[2] Although Father's sole point of error states that the evidence was legally and factually insufficient to support termination of his parental rights, Father confines his argument to a best-interest analysis. Because Father has not challenged the statutory grounds for termination, the trial court's findings that sufficient evidence supports termination pursuant to grounds (N) and (O) are binding on this Court. *See In re E.A.F.*, 424 S.W.3d 742, 750 (Tex. App.—Houston [14th Dist.] 2014, pet. denied).

K.A.M.C.'s parents had a previous case in 2017 at a time when K.A.M.C.'s mother was pregnant with K.A.M.C. In August 2017, while she was pregnant, Mother tested positive for marihuana. Throughout the pendency of the previous case, Walston requested that Father submit to drug tests. While Father completed some of the drug tests, he stopped submitting to drug tests in November 2017. To the extent the Department could get drug tests from Father, he continued to test positive.[3]

Father was ordered to complete certain services to alleviate concerns relating to the reasons K.A.M.C. came into the Department's care. Walston testified that she reviewed the family service plan with Father, and Father signed the plan. Father's plan required that he complete a drug and alcohol assessment, that he attend Celebrate Recovery classes three hours a week, and that he participate in drug treatment. Additionally, the plan required him to complete "Father's Focus Group," a psychosocial evaluation, and individual counseling; submit to random drug testing; abstain from drug and alcohol use; maintain stable housing and income; and refrain from engaging in criminal activity. Father was also ordered not to live with any child or supervise any child under the age of eighteen.

Father failed to complete a drug and alcohol assessment, failed to participate in Celebrate Recovery classes for three hours a week, did not complete a drug treatment program, did not participate in or complete the Father's Focus Group, and did not provide a psychosocial evaluation. Because the case involved drug use, the family service plan also required Father to develop a

---

[3]Child Protective Services (CPS) became involved based on the concern that Father continued to use drugs following K.A.M.C.'s birth and his inability to provide full-time care for his infant daughter.

3

relapse plan. He did not provide such a plan, and he did not complete a court-ordered anger management class.

Father also failed to submit to drug testing. Walston attempted to arrange for random drug testing by text messaging Father with a copy to Father's attorney. Walston explained that she limited her communications with Father to text messaging, as Father had engaged in abusive, hostile, and threatening communications with her. Walston never received proof that Father submitted to drug testing throughout the case.

Walston's last encounter with Father was on March 28, 2018, at a status review hearing. Walston tried to contact Father by text message on more than one occasion after that, but Father did not respond. The termination hearing began on November 13, 2018.

Father—who did not appear at the termination hearing—provided no proof that he could offer K.A.M.C. appropriate housing or that he had a stable income.[4] Father was not employed when the case started, and there was no evidence that he was employed at the time of trial. Because the court required Father to submit to a clean hair-follicle drug test as a condition of visitation with K.A.M.C., and because Father did not submit to drug testing, he was not permitted to visit K.A.M.C. during the pendency of the case. Father therefore had not seen K.A.M.C. since her removal. He sent no cards, letters, or gifts to K.A.M.C. since the inception of the case.

K.A.M.C. had been living with a maternal cousin and her husband since her removal from the home of her biological parents and was doing well. K.A.M.C. had siblings who were

---

[4]Father's attorney explained that he sent Father a certified letter advising Father of the trial date and asked Father to contact counsel as soon as possible. The letter was sent to Father's last known address. The green card receipt was returned signed, but the signature did not look like Father's signature.

previously placed with a different cousin in the same town, and she could see her siblings weekly. The children attended sporting events together, and they attended family events together.

Mariann Carias, the Court Appointed Special Advocate for K.A.M.C., testified that K.A.M.C. was doing well in her placement home and that she adored her foster father. He and the foster mother loved K.A.M.C. and wanted her in their lives. Carias testified that she would be very concerned that K.A.M.C. would be in emotional or physical danger if she were returned to her biological parents. There was no proof that would suggest that Father had changed his lifestyle, and Carias had not seen anything to show that Father wanted a relationship with K.A.M.C. Carias believed that termination would be in K.A.M.C.'s best interest.

## II. Standard of Review

"The natural right existing between parents and their children is of constitutional dimensions." *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). Indeed, parents have a fundamental right to make decisions concerning "the care, custody, and control of their children." *Troxel v. Granville*, 530 U.S. 57, 65 (2000). "Because the termination of parental rights implicates fundamental interests, a higher standard of proof—clear and convincing evidence—is required at trial." *In re A.B.*, 437 S.W.3d 498, 502 (Tex. 2014). "Clear and convincing evidence" is that "degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007 (West 2014); *see In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009). This standard of proof necessarily affects our review of the evidence.

In our legal sufficiency review, we consider all the evidence in the light most favorable to the findings to determine whether the fact-finder could have reasonably formed a firm belief or

5

conviction that the grounds for termination were proven. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (per curiam); *In re J.F.G., III*, 500 S.W.3d 554, 558 (Tex. App.—Texarkana 2016, no pet.). We assume the trial court, acting as fact-finder, resolved disputed facts in favor of the finding, if a reasonable fact-finder could do so, and disregarded evidence that the fact-finder could have reasonably disbelieved or whose credibility could reasonably be doubted. *J.P.B.*, 180 S.W.3d at 573.

In our review of factual sufficiency, we must determine whether the evidence, when viewed in a neutral light, "is such that a fact[-]finder could reasonably form a firm belief or conviction about the truth of the . . . allegations." *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002); *In re C.A.J.*, 459 S.W.3d 175, 179 (Tex. App.—Texarkana 2015, no pet.). In applying this standard in light of the "clear and convincing" language required by Section 161.001 of the Texas Family Code, we must be careful not to "be so rigorous that the only fact[-]findings that could withstand review are those established beyond a reasonable doubt." *In re R.A.L.*, 291 S.W.3d 438, 443 (Tex. App.—Texarkana 2009, no pet.) (quoting *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (per curiam)).

Despite the profound constitutional interests at stake in a proceeding to terminate parental rights, "the rights of natural parents are not absolute; protection of the child is paramount." *In re A.V.*, 113 S.W.3d 355, 361 (Tex. 2003) (quoting *In re J.W.T.*, 872 S.W.2d 189, 195 (Tex. 1994)); *see In re M.S.*, 115 S.W.3d 534, 547 (Tex. 2003). "A child's emotional and physical interests must not be sacrificed merely to preserve parental rights." *C.A.J.*, 459 S.W.3d at 179 (citing *C.H.*, 89 S.W.3d at 26).

## III. Sufficient Evidence Established that Termination Was in K.A.M.C.'s Best Interest

To uphold the termination finding, we must determine whether the Department proved, by clear and convincing evidence, that termination of Father's parental rights was in K.A.M.C.'s best interest. *See* TEX. FAM. CODE. ANN. § 161.001(b)(2). There is a strong presumption that a child's interest is best served by preserving conservatorship in the natural parent. That presumption can be overcome, however, with clear and convincing evidence to the contrary. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam).

> Certain factors may be considered in determining the best interest of the child, including
>
> (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals, (6) the plans for the child by these individuals, (7) the stability of the home, (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent.

*In re K.S.*, 420 S.W.3d 852, 855 (Tex. App.—Texarkana 2014, no pet.) (citing *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976)). This list is not exclusive, and there is no requirement that any unique set of factors be proved. *Id.* Certainly, it is not necessary to prove all nine factors. *C.H.*, 89 S.W.3d at 27. The analysis of evidence relating to one factor may be adequate in a particular situation to support a finding that termination is in the best interest of the child. *In re J.O.C.*, 47 S.W.3d 108, 115 (Tex. App.—Waco 2001, no pet.), *overruled on other grounds by In re J.F.C.*, 96 S.W.3d 256, 267 n.9 (Tex. 2002). Additionally, evidence supporting the termination of parental rights is also probative of best interest. *C.H.*, 89 S.W.3d at 28.

K.A.M.C., who was ten months old at the time of trial, had been living in her foster home for nine months. Due to her young age, K.A.M.C.'s desires cannot be determined. Even so, "[w]hen children are too young to express their desires, the fact[-]finder may consider that the children have bonded with the foster family, are well-cared for by them, and have spent minimal time with a parent." *In re J.D.*, 436 S.W.3d 105, 118 (Tex. App.—Houston [14th Dist.] 2014, no pet.). K.A.M.C. referred to her foster parents as "momma" and "daddy' and was bonded to them. When her foster father walked into the room, she immediately knew his voice, began to smile, and wanted to go to him. She sought comfort from both of her foster parents and was very affectionate toward both. Carias, like Walston, testified that K.A.M.C. was bonded to her foster parents and had been integrated into the family as if she were their own daughter.

K.A.M.C. had not seen Father in around nine months at the time of trial. Father had not visited or maintained contact with K.A.M.C. The fact that Father had not seen K.A.M.C. in nine months at the time of trial suggests that there was little, if any, emotional bond between K.A.M.C. and Father. *See In re M.B.*, No. 02-15-00128-CV, 2015 WL 4380868, at *15 (Tex. App.—Fort Worth July 16, 2015, no pet.) (mem. op.) (fact that Mother had not visited children in almost a year supported conclusion that there was little, if any, emotional bond between Mother and children). K.A.M.C.'s foster parents have expressed a desire to adopt her. The first *Holley* factor weighs in favor of terminating Father's parental rights.

Walston testified that she did not believe Father could provide for K.A.M.C.'s emotional and physical needs now or in the future. Father did not avail himself of services offered through the Department and provided no evidence that he was employed or that he could provide K.A.M.C.

8

with a stable home now or in the future. During her relatively short life, there was no evidence in the record that Father provided for any of K.A.M.C.'s physical or emotional needs. "[T]he amount of contact between the parent and child, the parent's failure to provide financial and emotional support, . . . and their past performance as a parent are all relevant in determining the child's best interest." *In re A.T.*, No. 06-14-00091-CV, 2015 WL 733275, at *5 (Tex. App.—Texarkana Feb. 18, 2015, no pet.) (mem. op.) (citing *C.H.*, 89 S.W.3d at 28).

The record also includes evidence of Father's past drug use and his continued refusal throughout the pendency of the case to submit to drug testing. The trial court was free to infer that this refusal indicated that Father was continuing to use drugs. *See In re K.C.B.*, 280 S.W.3d 888, 895 (Tex. App.—Amarillo 2009, pet. denied). "Drug use during the pendency of a termination proceeding is evidence of an inability to provide a stable environment . . . and provide for the child's emotional and physical needs." *In re Y.G.*, No. 07-11-00349-CV, 2012 WL 652466, at *6 (Tex. App.—Amarillo Feb. 29, 2012, no pet.) (mem. op.). Thus, the second and seventh *Holley* factors weigh in favor of terminating Father's parental rights.

The ostensible reason Father did not visit K.A.M.C. or maintain contact with her throughout the case—and for most of her life—was because he could not or would not submit to a hair-follicle drug test. There was no evidence that Father was leading a drug-free lifestyle that would permit him to properly care for K.A.M.C. Walston testified that, if K.A.M.C. were returned to Father, she believed K.A.M.C. would face physical or emotional danger because Father had not completed his services. Additionally, he had done nothing to alleviate the Department's concerns that he showed a positive lifestyle change for the sake of his daughter. *See In re C.A.J.*, 122 S.W.3d

888, 893–94 (Tex. App.—Fort Worth 2003, no pet.) (parent's continuous drug use poses present and future emotional and physical danger to a child). And, based on her own interactions with Father, Walston conveyed that she was concerned about Father's temper and anger issues. Consequently, the third *Holley* factor weighs in favor of termination.

The fourth, fifth, and sixth *Holley* factors likewise weigh in favor of termination. There was no evidence in the record regarding Father's parental abilities. By choice, Father absented himself from K.A.M.C.'s life because he would not submit to drug testing. That indicates a lack of desire to parent the child. *See K.S.*, 420 S.W.3d at 855–56 (lack of contact between the parent and child weighs in favor of termination because it shows a "lack of resolve" or disinterest in parenting the child).

Father's family service plan required that he participate in several programs that would have improved on his parental abilities, including Father's Focus, anger management, Celebrate Recovery, and drug treatment, among others. Father did not participate in any of these programs. *See In re J.D.*, 436 S.W.3d 105, 118 (Tex. App.—Houston [14th Dist.] 2014, no pet.) ("A fact[-]finder may infer from a parent's past inability to meet a child's physical and emotional needs an inability or unwillingness to meet a child's needs in the future."). The court could have also considered Father's absence from trial to conclude that the proceeding was not important to him. *See In re J.D.S.*, 111 S.W.3d 324, 327 (Tex. App.—Texarkana 2003, no pet.) ("The absence of a parent at the trial to terminate his or her parental rights is prejudicial to the parent. The parent's absence could leave the fact-finder with the impression that the proceeding is not important to the parent."). Conversely, K.A.M.C.'s caregivers showed—over a period of nine months—that they

10

could act as competent and loving caregivers for K.A.M.C. Their plans were to adopt K.A.M.C. Father had been largely absent from the proceedings and from K.A.M.C.'s life.

The evidence established that Father had not exercised his rights to visit K.A.M.C., even though he could have easily done so had he submitted to and passed drug tests. Father offered no excuse for his failure to visit K.A.M.C. or to provide support for her. The last two *Holley* factors weigh in favor of termination.

At the time of trial, K.A.M.C. was currently living in a loving and safe environment where she received the care and stability she needed. Based on this record, under the standards as set out above, we conclude that the evidence was sufficient to allow the trial court to determine that K.A.M.C.'s best interests were served by the termination of Father's parental rights. Therefore, Section 161.001(b)(2) of the Texas Family Code has been met. *See* TEX. FAM. CODE ANN. § 161.001(b)(2).

## IV. Conclusion

We affirm the trial court's judgment.

Scott E. Stevens
Justice

Date Submitted: February 26, 2019
Date Decided: March 14, 2019

11