

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-18-00106-CV

_____

IN THE INTEREST OF M.S. AND K.S., CHILDREN

On Appeal from the 196th District Court
Hunt County, Texas
Trial Court No. 85032

Before Morriss, C.J., Burgess and Stevens, JJ.
Memorandum Opinion by Justice Burgess

## MEMORANDUM OPINION

Following a bench trial, Father's parental rights to M.S. and K.S.[1] were terminated pursuant to grounds (N) and (O) of Section 161.001(b)(1) of the Texas Family Code. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(N), (O) (West Supp. 2018). In this accelerated appeal, Father complains that the evidence was legally and factually insufficient to support the trial court's finding that termination of his parental rights was in the children's best interests.[2] Because sufficient evidence supports the best-interest finding, we affirm the trial court's order.[3]

## I.    Factual and Procedural Background

In August 2017, the Texas Department of Family and Protective Services (the Department) removed one-year-old K.S. and two-year-old M.S. from their home pursuant to Section 262.104 of the Texas Family Code[4] due to parental neglect. When the Department visited the home, the children were in Father's care while Mother was at work. The Department found the home in a "deplorable condition," concluded that the children were being neglected, and believed that the children were in danger. At the time of the children's removal, Father tested positive for

---

[1]In this opinion, we refer to the children by initials and to the parents as Father and Mother to protect the children's identities. *See* TEX. R. APP. P. 9.8.

[2]Although Father's sole point of error states that the evidence was legally and factually insufficient to support termination of his parental rights, Father confines his argument to a best-interest analysis. Because Father has not challenged the statutory grounds for termination, the trial court's findings that sufficient evidence supports termination pursuant to grounds (N) and (O) are binding on this Court. *See In re E.A.F.*, 424 S.W.3d 742, 750 (Tex. App.—Houston [14th Dist.] 2014, pet. denied).

[3]In May 2018, the Department placed the children with Mother on a monitored return. Mother completed her court-ordered services and did all that the Department requested. She plans on filing for divorce when this case is finished.

[4]Section 262.104 allows the Department, under certain circumstances, to take emergency possession of a child without a court order. TEX. FAM. CODE ANN. § 262.104 (West Supp. 2018).

amphetamine, marihuana, and methamphetamine. At that time, Father exhibited an inability to parent his children properly, and according to Cheryl Garcia, a Department conservatorship worker, there was no proof that had changed.

Elizabeth Crosby, a conservatorship worker with the Department, spoke with Father at the time of the children's removal. Father indicated that he had used methamphetamine in the previous five years, but that he had stopped. Father relapsed a couple of weeks before the Department removed the children from the home. Father submitted to a second drug test in September 2017 and tested positive for marihuana. September 2017 was also the last time Father visited the children. He interacted well with them, and the children seemed to enjoy his visit.[5]

Before his September 2017 positive drug test, Father signed a family service plan that required completion of a drug and alcohol dependency assessment; abstinence from alcohol and drug use; and completion of a psychiatric evaluation, batterer's intervention and prevention program, Father's Focus classes, and individual counseling. Father was also required to submit to random drug testing, to attend Narcotics Anonymous (NA) or Alcoholics Anonymous (AA) at least three times a week, and to successfully complete an intensive outpatient program (IOP) and a supportive outpatient program (SOP). Father was not permitted to supervise or live with anyone under the age of eighteen and was required to maintain a stable income as well as stable and appropriate housing.

---

[5]Following a status hearing on October 5, 2017, Crosby lost contact with Father. She contacted Father by text that same month to request another drug test, but Father did not respond. Crosby requested a special investigator to locate Father, but the investigator was unable to find him. Then, in August 2018, Father contacted Garcia to "ask when court was and to inform [her] that he would be there." Father was present at the permanency hearing in August 2018. The final trial date was set at the permanency hearing. Father was notified of the trial date and was appointed counsel. Father was not present at the termination hearing.

3

Although Father completed the substance abuse evaluation in August 2017, he did not provide proof of his attendance at NA or AA three times a week. Father did not complete a psychiatric evaluation and did not participate in individual counseling. There is no evidence that Father completed the Father's Focus Group, attended or completed a Batterer's Intervention Program, or completed an IOP and SOP. Father failed to provide proof that he earned a stable income or that he acquired stable housing. From July 2017 to the time of the termination hearing, Father had provided no child support, clothes, or birthday gifts for the children.

Mother's trial testimony indicated that Father historically struggled with providing for the children. From the time of their marriage in 2014—and even before that—Father was unable to maintain employment for more than six months to one year. Mother believed that Father's intermittent methamphetamine use was at least part of the reason he did not maintain stable employment.

Mother testified that she left Father four or five times during the marriage because he was dealing drugs. Father usually quit using methamphetamine when Mother left him and denied him access to the children, but he always relapsed. According to Mother, Father also had anger issues and once kicked her out of a moving vehicle. On another occasion, Father pushed Mother with enough force that her shoulder knocked a hole in the wall. Father sometimes punched holes in the walls and broke things. Mother and Father separated less than a month after the children were removed from their home.

Although she had not seen Father for almost a year, Father contacted Mother on Facebook messenger a few weeks before the termination hearing in Fall 2018. At that time, Father indicated

4

that he was staying with friends in Pampa, Texas, and could not come to court for the hearing. Father indicated that, once he got a job, he would like to send money for the kids. Father admitted to Mother that he had not completed his services because it would be easier if Mother got the children.

At the time of the hearing, Mother was single and financially stable. She had done well in taking care of the children and was surrounded by extended family, who were involved in the children's lives. Mother believed that it was in the children's best interests to have Father's parental rights terminated. She did not believe he would ever change, as he had many chances and had not done so. She did not believe Father could meet the children's needs then or in the future, and, due to his drug use, she was concerned for their physical and emotional safety if Father were permitted to have access to the children. Shortly before the children were removed, Father had gone to a concert where he tried mushrooms and acid. After the children were removed, Father used marihuana.

The Court Appointed Special Advocate (CASA) testified that she met Father on one occasion at the adversary hearing in August 2017. She had no further contact with Father. She spoke with Father's brother and father the month before trial, and they could not provide any information which caused her to believe that Father could provide a home for the children. Father had not seen the children since September 2017, and she did not believe he and the children were bonded. She did not believe Father could provide for himself, much less for the children.

## II.    Standard of Review

"The natural right existing between parents and their children is of constitutional dimensions." *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985).  Indeed, parents have a fundamental right to make decisions concerning "the care, custody, and control of their children."  *Troxel v. Granville*, 530 U.S. 57, 65 (2000).  "Because the termination of parental rights implicates fundamental interests, a higher standard of proof—clear and convincing evidence—is required at trial."  *In re A.B.*, 437 S.W.3d 498, 502 (Tex. 2014).  "Clear and convincing evidence" is that "degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established."  TEX. FAM. CODE ANN. § 101.007 (West 2014); *see In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009).  This standard of proof necessarily affects our review of the evidence.

In our legal sufficiency review, we consider all the evidence in the light most favorable to the findings to determine whether the fact-finder could have reasonably formed a firm belief or conviction that the grounds for termination were proven.  *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (per curiam); *In re J.F.G., III*, 500 S.W.3d 554, 558 (Tex. App.—Texarkana 2016, no pet.).  We assume the trial court, acting as fact-finder, resolved disputed facts in favor of the finding, if a reasonable fact-finder could do so, and disregarded evidence that the fact-finder could have reasonably disbelieved or whose credibility could reasonably be doubted.  *J.P.B.*, 180 S.W.3d at 573.

In our review of factual sufficiency, we must determine whether the evidence, when viewed in a neutral light, "is such that a fact[-]finder could reasonably form a firm belief or conviction

6

about the truth of the . . . allegations." *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002); *In re C.A.J.*, 459 S.W.3d 175, 179 (Tex. App.—Texarkana 2015, no pet.). In applying this standard in light of the "clear and convincing" language required by Section 161.001 of the Texas Family Code, we must be careful not to "be so rigorous that the only fact[-]findings that could withstand review are those established beyond a reasonable doubt." *In re R.A.L.*, 291 S.W.3d 438, 443 (Tex. App.—Texarkana 2009, no pet.) (quoting *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (per curiam)).

Despite the profound constitutional interests at stake in a proceeding to terminate parental rights, "the rights of natural parents are not absolute; protection of the child is paramount." *In re A.V.*, 113 S.W.3d 355, 361 (Tex. 2003) (quoting *In re J.W.T.*, 872 S.W.2d 189, 195 (Tex. 1994)); *see In re M.S.*, 115 S.W.3d 534, 547 (Tex. 2003). "A child's emotional and physical interests must not be sacrificed merely to preserve parental rights." *C.A.J.*, 459 S.W.3d at 179 (citing *C.H.*, 89 S.W.3d at 26).

## III. Sufficient Evidence Established that Termination Was in the Children's Best Interests

To uphold the termination finding, we must determine whether the Department proved, by clear and convincing evidence, that termination of Father's parental rights was in the children's best interests. *See* TEX. FAM. CODE. ANN. § 161.001(b)(2). There is a strong presumption that a child's interest is best served by preserving conservatorship in the natural parent. That presumption can be overcome, however, with clear and convincing evidence to the contrary. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam).

Certain factors may be considered in determining the best interest of the child, including

(1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals, (6) the plans for the child by these individuals, (7) the stability of the home, (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent.

*In re K.S.*, 420 S.W.3d 852, 855 (Tex. App.—Texarkana 2014, no pet.) (citing Holley *v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976)). This list is not exclusive, and there is no requirement that any unique set of factors be proved. *Id.* Certainly, it is not necessary to prove all nine factors. *C.H.*, 89 S.W.3d at 27. The analysis of evidence relating to one factor may be adequate in a particular situation to support a finding that termination is in the best interest of the child. *In re J.O.C.*, 47 S.W.3d 108, 115 (Tex. App.—Waco 2001, no pet.), *overruled on other grounds by In re J.F.C.*, 96 S.W.3d 256, 267 (Tex. 2002)). Additionally, evidence supporting the termination of parental rights is also probative of best interest. *C.H.*, 89 S.W.3d at 28.

At the time of trial, K.S. was two-years old and M.S was three-years old. They had been in the Department's conservatorship for more than one year and had been living with Mother on a monitored return since May 2018. Because they were so young, the children's desires could not be determined. Yet, "[w]hen children are too young to express their desires, the fact[-]finder may consider that the children have bonded with the foster family, are well-cared for by them, and have spent minimal time with a parent." *In re J.D.*, 436 S.W.3d 105, 118 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

8

Here, the children were in Mother's care for approximately six months before trial and were bonded to her. The children's last contact with Father was in September 2017, over a year before trial. Since that time, Father had not visited or maintained contact with the children. The fact that Father had not seen the children in more than a year before trial suggests that there is little, if any, emotional bond between the children and Father. *See In re M.B.*, No. 02-15-00128-CV, 2015 WL 4380868, at *15 (Tex. App.—Fort Worth July 16, 2015, no pet.) (mem. op.) (fact that Mother had not visited children in almost a year supported conclusion that there was little, if any, emotional bond between Mother and children). The first *Holley* factor weighs in favor of terminating Father's parental rights.

Garcia testified that she did not believe Father could provide for the children's emotional and physical needs then or in the future. Father did not avail himself of services offered through the Department and provided no evidence that he was employed or that he could provide the children with a stable home, then or in the future. Garcia testified that the children were exposed to domestic violence in the home and had exhibited some aggressive behavior. Father did not complete batterer's intervention classes and did not provide proof of his sobriety. And, because of his intermittent drug use, Father exhibited a history of struggling to maintain employment. Since the children have had no contact with Father and have been returned to Mother, they have shown improvement.

"[T]he amount of contact between the parent and child, the parent's failure to provide financial and emotional support, . . . and their past performance as a parent are all relevant in determining the child's best interest." *In re A.T.*, No. 06-14-00091-CV, 2015 WL 733275, at *5

9

(Tex. App.—Texarkana Feb. 18, 2015, no pet.) (mem. op.) (citing *C.H.*, 89 S.W.3d at 28). The record also includes evidence of Father's drug use, which continued after the children were removed from the home. The record further indicates that Father absented himself from contact with Garcia and did not respond to her request for a third drug test.

The trial court was free to infer that this refusal indicated that Father was continuing to use drugs. *See In re K.C.B.*, 280 S.W.3d 888, 895 (Tex. App.—Amarillo 2009, pet. denied). "Drug use during the pendency of a termination proceeding is evidence of an inability to provide a stable environment . . . and provide for the child's emotional and physical needs." *In re Y.G.*, No. 07-11-00349-CV, 2012 WL 652466, at *6 (Tex. App.—Amarillo Feb. 29, 2012, no pet.) (mem. op.). The second and seventh *Holley* factors weigh in favor of terminating Father's parental rights.

There was no evidence that Father was leading a drug-free lifestyle which would permit him to properly care for or interact with the children. Mother testified that, if Father were permitted access to the children, she would be concerned for their physical and emotional safety due to Father's drug use. Garcia testified that Father was not willing and able to do what was needed to be reunified with his children and to make positive life changes. She did not believe that a continuing relationship between Father and the children would be beneficial to the children. According to Garcia, Father had not demonstrated the ability to provide the children with a safe living environment. *See In re C.A.J.*, 122 S.W.3d 888, 893–94 (Tex. App.—Fort Worth 2003, no pet.) (parent's continuous drug use poses an emotional and physical danger to a child now and in the future).

The record also includes evidence of Father's physical abuse of Mother, which exposed the children to domestic violence. Evidence of domestic violence in the home could place the children in emotional and physical danger. *See* TEX. FAM. CODE ANN. § 263.307(b)(7) (West Supp. 2018) (whether there is history of abusive or assaultive conduct by child's family or others who have access to child's home is factor to consider); *In re J.I.T.P.*, 99 S.W.3d 841, 846 (Tex. App.—Houston [14th Dist.] 2003, no pet.) (domestic violence, even when child is not intended victim, supports finding that termination is in child's best interest). The third *Holley* factor weighs in favor of termination.

The fourth, fifth, and sixth *Holley* factors likewise weigh in favor of termination. While there is evidence that Father interacted well with the children when he last saw them in September 2017, other evidence suggests that Father's parental abilities were lacking. The CASA testified that Father had not shown an interest in the children almost throughout the entire case, and she did not believe that Father could provide them with anything. Father's intermittent drug use, violent temper, and inability to maintain stable employment indicate that the children were not a priority in his life.

By choice, Father absented himself from the children's lives and admitted to Mother that he did not complete his family service plan because it would be easier if she got the children. His last contact with the children was more than a year before the final termination hearing. He had not supported the children or sent them any cards or birthday presents since they were removed. That indicates a lack of desire to parent the children. *See K.S.*, 420 S.W.3d at 855–56 (lack of

11

contact between the parent and child weighs in favor of termination because it shows a "lack of resolve" or disinterest in parenting the child).

Father's family service plan required that he participate in several programs which would have improved on his parental abilities, including Father's Focus, Batterer's Intervention, AA or NA, and drug treatment, among other things. Father did not participate in any of these programs. *See In re J.D.*, 436 S.W.3d 105, 118 (Tex. App.—Houston [14th Dist.] 2014, no pet.) ("A fact[-]finder may infer from a parent's past inability to meet a child's physical and emotional needs an inability or unwillingness to meet a child's needs in the future.").

The court could have also considered Father's absence from trial to conclude that the proceeding was not important to him. *See In re J.D.S.*, 111 S.W.3d 324, 327 (Tex. App.—Texarkana 2003, no pet.) ("The absence of a parent at the trial to terminate his or her parental rights is prejudicial to the parent. The parent's absence could leave the fact-finder with the impression that the proceeding is not important to the parent."). The evidence established that Father did not exercise his rights to visit the children and offered no excuse for his failure to do so or to provide support for the children. The last two *Holley* factors weigh in favor of termination.

The children were living in a loving and safe environment with Mother, surrounded by a supportive family where they received the care and stability they needed. Based on this record, under the standards as set out above, we conclude that the evidence is sufficient to allow the trial court to determine that it was in the children's best interests to terminate Father's parental rights. Therefore, Section 161.001(b)(2) of the Texas Family Code has been met. *See* TEX. FAM. CODE ANN. § 161.001(b)(2).

## IV.    Conclusion

We affirm the trial court's judgment.

Ralph K. Burgess
Justice

Date Submitted:        March 14, 2019
Date Decided:          March 28, 2019