

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

---

No. 06-19-00037-CV

---

## IN THE INTEREST OF A.M. AND A.M., CHILDREN

---

On Appeal from the 307th District Court
Gregg County, Texas
Trial Court No. 2018-869-DR

---

Before Morriss, C.J., Burgess and Stevens, JJ.
Memorandum Opinion by Justice Stevens

## MEMORANDUM OPINION

Six-year-old Adam[1] and his two-year-old sister, Amy, were removed from the care of their mother, Kim, because of suspected physical abuse. Eleven months later, a Gregg County district court terminated Kim's parental rights to the children and appointed their father, David, sole permanent managing conservator. On appeal, Kim contends that the evidence was factually insufficient to support the trial court's finding that termination of her parental rights was in the best interests of the children.

Because we find that the evidence was factually sufficient to support the finding, we affirm the trial court's judgment.

## I.      Standard of Review

"The natural right existing between parents and their children is of constitutional dimensions." *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). It is a fundamental right of parents to make decisions concerning "the care, custody, and control of their children." *Troxel v. Granville*, 530 U.S. 57, 65 (2000). "Because the termination of parental rights implicates fundamental interests, a higher standard of proof—clear and convincing evidence—is required at trial." *In re A.B.*, 437 S.W.3d 498, 502 (Tex. 2014). We are therefore required to "engage in an exacting review of the entire record to determine if the evidence is . . . sufficient to support the termination of parental rights." *Id.* at 500.

---

[1]We refer to the minor children and their family members by pseudonyms to protect the identity of the children. *See* TEX. R. APP. P. 9.8.

To terminate parental rights, the trial court must find, by clear and convincing evidence, that the parent has engaged in at least one statutory ground for termination and that termination is in the child's best interest. TEX. FAM. CODE ANN. § 161.001 (Supp.); *In re E.N.C.*, 384 S.W.3d 796, 798 (Tex. 2012). "Clear and convincing evidence" is that "degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007; *see In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009). This standard of proof necessarily affects our review of the evidence.

In our review of factual sufficiency, we give due consideration to evidence the trial court could have reasonably found to be clear and convincing. *In re H.R.M.*, 209 S.W.3d 105, 109 (Tex. 2006) (per curiam). We consider only that evidence the fact-finder reasonably could have found to be clear and convincing and determine "whether the evidence is such that a fact[-]finder could reasonably form a firm belief or conviction about the truth of the . . . allegations." *Id.* at 108 (quoting *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002)); *In re J.F.C.*, 96 S.W.3d 256, 264, 266 (Tex. 2002). "If, in light of the entire record, the disputed evidence that a reasonable fact[-]finder could not have credited in favor of the finding is so significant that a fact[-]finder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *J.F.C.*, 96 S.W.3d at 266.

Despite the profound constitutional interests at stake in a proceeding to terminate parental rights, "the rights of natural parents are not absolute; protection of the child is paramount." *In re A.V.*, 113 S.W.3d 355, 361 (Tex. 2003) (quoting *In re J.W.T.*, 872 S.W.2d 189, 195 (Tex. 1994)); *see In re M.S.*, 115 S.W.3d 534, 547 (Tex. 2003). "A child's emotional and physical interests must

3

not be sacrificed merely to preserve parental rights." *In re C.A.J.*, 459 S.W.3d 175, 179 (Tex. App.—Texarkana 2015, no pet.) (citing *C.H.*, 89 S.W.3d at 26).

## II.     Background

The Texas Department of Family and Protective Services (the Department) first opened a Family Based Safety Services (FBSS) case involving Adam and Amy when Adam was brought to school and appeared to be under the influence of some substance. A few months later, it became a conservatorship case[2] when Adam was found with cigarette burns on his body. Although it was undetermined who burned Adam, he and Amy were residing with Kim and her then boyfriend, Dwayne, at the time. In a Children's Advocacy Center (CAC) interview following this incident, Adam stated that he was afraid of Dwayne and that he hated his mother and Dwayne.

During the FBSS case, both Kim and David tested positive for marihuana, and Amy tested positive for methamphetamine. Yet, throughout the conservatorship case, David tested negative on every drug test requested by the Department. Kim, on the contrary, submitted to an oral swab once during the conservatorship, which was positive for marihuana, and once to a urine analysis. When she was requested to submit to a hair-follicle test several times during the conservatorship, she never complied.[3]

The trial court entered temporary orders requiring Kim and David to submit to psychological evaluations, to submit to drug and alcohol dependency counseling, to submit to

---

[2]The Department filed an original petition seeking the termination of the parental rights of both Kim and David.

[3]Holly Hunt, a caseworker for the Department, testified that they generally require a random drug test once a month. Even so, in this case, she could only request one when she could communicate with Kim, which was difficult since she was not given correct telephone numbers, and when she had a correct number, Dwayne would block Hunt's number. As a result, there were months in which she had no communication with Kim.

4

counseling sessions, to attend and successfully complete parenting classes, and to comply with the Department's family service plan (FSP). FSP's were prepared for both Kim and David addressing the primary issues of substance abuse and parenting. Within four months, David completed all the requirements of his FSP, including completing his parenting classes, counseling, and drug abuse treatment and maintaining employment, housing, and reliable transportation. The children were thus returned to David's care under an order for monitored return six months before the final hearing.

Kim, conversely, did not complete any of the services required under her FSP or the trial court's order. She had also been unemployed since the second month of the case. Additionally, although Kim was allowed up to two hours per week for visitation with the children, she had not visited the children for six months before the final hearing. Before her last visit, she visited the children sporadically and attended every third scheduled visitation. Testimony also showed that although Kim sought a protective order against Dwayne in early February, two weeks later, her Facebook page conveyed that she had married him. Finally, Kim failed to appear at the final hearing, and no explanation was given for her absence.

At the final hearing, Holly North, the Department's caseworker, testified that under David's care, the children were healthy and happy and that David had addressed all their medical needs. Adam was in kindergarten and doing well, and his behavior issues were getting better. Amy was in daycare and doing well. North opined that David showed he could make decisions that were in the best interests of the children. North also testified that the children were bonded to

David. She said that Adam had been vocal that he was angry with Kim and her choices, especially with her choice to stay with Dwayne. Adam had also stated that he did not want to visit with Kim.

That said, the Department recommended that David be appointed sole managing conservator and that Kim be appointed possessory conservator, with no visitation rights or any other statutory rights of a possessory conservator, and that she be ordered to pay child support. North opined that while it was not then in the best interests of the children to see Kim, they might be able to see her in the future if Kim got some stability in her life, went for a period without substance abuse, and got out of her turbulent relationships. North admitted, however, that based on Kim's actions during the case, Kim had given no indication that any of those changes would occur. North also admitted that the only reason the Department did not recommend termination was so that child support could be ordered, although it was unlikely that Kim would get a job and pay child support.

Andrew Sanders, the program director for East Texas Court Appointed Special Advocates, opined that it was in the best interests of the children that Kim's parental rights be terminated. He reasoned that Kim had not shown the ability to provide stability or a safe environment for the children, that she had not shown that the children were a priority, and that termination would protect them from her poor decisions. He also confirmed that David, on the other hand, had worked hard to provide the children with a safe home, to maintain stable employment, and to provide for the children's physical, medical, and emotional needs. He added that although David struggled financially, he had worked hard to find the necessary community resources to provide the children with a safe place to live and to acquire the necessary appliances, bedding, and clothes. Sanders

opined that David had shown that he was willing to go through whatever resource he needed to provide for the children.

At the close of testimony, the trial court terminated Kim's parental rights and appointed David as sole permanent managing conservator of the children.

### III.    Analysis

There is a strong presumption that it is in the child's best interest to be kept with a parent. *In re E.W.*, 494 SW.3d 287, 300 (Tex. App.—Texarkana 2015, no pet.); *see In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam). "Termination 'can never be justified without the most solid and substantial reasons.'" *Id.* (quoting *In re N.L.D.*, 412 S.W.3d 810, 822 (Tex. App.—Texarkana 2013, no pet.) (quoting *Wiley v. Spratlan*, 543 S.W.2d 349, 352 (Tex. 1976)).

In determining the best interests of the child, we consider the following *Holley* factors:

> (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals, (6) the plans for the child by these individuals, (7) the stability of the home, (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent.

*In re E.N.C.*, 384 S.W.3d 796, 807 (Tex. 2012) (citing *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976)); *see also* TEX. FAM. CODE ANN. § 263.307(b).

Proof of all these factors is not a condition precedent to parental-rights termination. *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002); *In re N.L.D.*, 412 S.W.3d 810, 819 (Tex. App.—Texarkana 2013, no pet.). Rather, evidence relating to a single factor may suffice in a proper case to support a finding that termination is in the best interests of the child. *In re K.S.*, 420 S.W.3d 852, 855

(Tex. App.—Texarkana 2014, no pet.) (citing *In re J.O.C.*, 47 S.W.3d 108, 115 (Tex. App.—Waco 2001, no pet.), *disapproved on other grounds by In re J.F.C.*, 96 S.W.3d 256, 267 n.39 (Tex. 2002)). When considering the child's best interest, we may consider that a parent cannot provide adequate care for a child, lacks parenting skills, or exercises poor judgment. *In re C.A.J.*, 122 S.W.3d 888, 893 (Tex. App.—Fort Worth 2003, no pet.). Parental drug abuse, which reflects poor judgment, is also a factor that may be considered when determining the child's best interest. *In re M.R.*, 243 S.W.3d 807, 820 (Tex. App.—Fort Worth 2007, no pet.). The amount of contact between the parent and child, the parent's failure to provide financial and emotional support, continuing criminal history, and past performance as a parent are all relevant in determining the child's best interest. *See In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002). Finally, evidence showing the parent committed acts or omissions that would be statutory grounds for termination may also be probative that termination is in the best interest of the children. *See id.*

Although Amy was too young to express her desires, Adam expressed anger and hatred toward Kim and Dwayne and stated that he did not want to even visit with Kim. And while in the care of Kim and Dwayne, Adam had suffered cigarette burns, and Amy was exposed to methamphetamine. During the case, Kim consistently chose her relationship with Dwayne over her relationship with the children, to the extent of not visiting the children during the last six months of the case. This was compelling evidence that Kim had not met the physical and emotional needs of the children and had exposed them to physical and emotional danger, both before and during the case. In contrast, David had worked hard during the case to provide for the

8

emotional and physical needs of the children and to protect the children. We find that the first, second, and third *Holley* factors favor termination.

Kim did not complete any of the services required by the trial court and her FSP, including those which would specifically address her parenting deficiencies. Throughout the case, she showed no ability, or desire, to parent the children adequately. David, on the other hand, completed all of his required services, including parenting classes. He also showed in the last six months of the case both the willingness and ability to provide for and, if necessary, to engage community resources to provide for all the needs of the children. Under these facts, the fourth *Holley* factor favors termination.

Because there was no evidence of the programs available to assist Kim or David, or of their plans for the children, these factors are neutral.

Kim failed to maintain steady employment or a stable home. Rather, she had been unemployed since the first month of the case and moved several times without advising the caseworker of her whereabouts or contact information. Kim failed drug tests both before and during the case and failed to submit to several more. In addition, she also failed to maintain contact with the children, including failing to visit with them during the last six months of the case. Kim chose her relationship with Dwayne even when it compromised her relationship with her children. No excuses were offered for any of Kim's acts or omissions. Also, Kim's unexplained absence at the final hearing revealed her unwillingness to parent the children. *See In re K.G.-J.W.*, No. 01-17-00739-CV, 2018 WL 1161556, at *10 (Tex. App.—Houston [1st Dist.] Mar. 6, 2018, pet. denied) (mem. op.) (unexplained failure to appear at final hearing demonstrates a lack of

9

motivation to parent and supports best-interest finding). By contrast, David maintained gainful employment, provided a safe and stable home for the children, and provided for their physical and emotional needs. Under these facts, the seventh, eighth, and ninth *Holley* factors favor termination.

Considering the entire record, we find that a fact-finder could reasonably form a firm belief or conviction that termination of Kim's parental rights was in the best interests of Adam and Amy. *See H.R.M.*, 209 S.W.3d at 108. As a result, we find that there was factually sufficient evidence to support the trial court's finding that termination of Kim's parental rights was in the best interests of the children. We overrule Kim's sole issue.

## IV. Conclusion

For the reasons stated above, we affirm the trial court's judgment.

Scott E. Stevens
Justice

Date Submitted:     July 22, 2019
Date Decided:      July 25, 2019