

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-21-00061-CV

_____

IN THE INTEREST OF B.C., A CHILD

On Appeal from the 307th District Court
Gregg County, Texas
Trial Court No. 2019-832-DR

Before Morriss, C.J., Burgess and Stevens, JJ.
Memorandum Opinion by Justice Burgess

# MEMORANDUM OPINION

The Department of Family and Protective Services (the Department) filed a petition to terminate Mother's parental rights to her son, eight-year-old Brandon.[1]  After a bench trial, the trial court terminated Mother's parental rights after finding that (1) she knowingly placed or allowed the child to remain in conditions or surroundings that endangered his physical or emotional well-being, (2) she engaged in conduct or knowingly placed the child with persons who engaged in conduct that endangered his physical or emotional well-being, (3) she failed to comply with the provisions of a court order that specifically established, under Section 161.001(b)(1)(O), the actions necessary for her to obtain the child's return, (4) she used a controlled substance in a manner that endangered the health or safety of the child, as described in Section 161.001(b)(1)(P) of the Texas Family Code, and (5) termination of parental rights was in the child's best interests.  *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E), (O), (P), (b)(2) (Supp.).

In her sole point of error on appeal, Mother asks whether termination of her parental rights was "within the best interest of" her son.  Because Mother does not expressly question the sufficiency of the evidence supporting the trial court's finding and because she recites evidence showing that the trial court's ruling was supported by legally sufficient evidence, we interpret her point of error as a challenge to the factual sufficiency of the evidence supporting the best-interest finding.  Because we conclude that the evidence was factually sufficient to support the

---

[1]We use pseudonyms to protect the identity of the child.  *See* TEX. R. APP. P. 9.8.

finding that termination of Mother's parental rights was in Brandon's best interests, we affirm the trial court's judgment.

## I.    Standard of Review

"The natural right existing between parents and their children is of constitutional dimensions." *In re L.E.S.*, 471 S.W.3d 915, 919 (Tex. App.—Texarkana 2015, no pet.) (quoting *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985)). "Indeed, parents have a fundamental right to make decisions concerning 'the care, custody, and control of their children.'" *Id.* (quoting *Troxel v. Granville*, 530 U.S. 57, 65 (2000)). "Because the termination of parental rights implicates fundamental interests, a higher standard of proof—clear and convincing evidence—is required at trial." *Id.* (quoting *In re A.B.*, 437 S.W.3d 498, 502 (Tex. 2014)). This Court is "required to 'engage in an exacting review of the entire record to determine if the evidence is . . . sufficient to support the termination of parental rights.'" *Id.* at 919–20 (quoting *In re A.B.*, 437 S.W.3d at 500). "[I]nvoluntary termination statutes are strictly construed in favor of the parent." *Id.* at 920 (quoting *In re S.K.A.*, 236 S.W.3d 875, 900 (Tex. App.—Texarkana 2007, pet. denied) (quoting *Holick*, 685 S.W.2d at 20)).

"In order to terminate parental rights, the trial court must find, by clear and convincing evidence, that the parent has engaged in at least one statutory ground for termination and that termination is in the child's best interest." *Id.* (citing *In re E.N.C.*, 384 S.W.3d 796, 798 (Tex. 2012)). "'Clear and convincing evidence' is that 'degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be

3

established.'" *Id.* (quoting TEX. FAM. CODE ANN. § 101.007); *see In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009). "This standard of proof necessarily affects our review of the evidence." *Id.*

"There is a strong presumption that keeping a child with a parent is in the child's best interest." *In re J.A.S., Jr.*, No. 13-12-00612-CV, 2013 WL 782692, at *7 (Tex. App.—Corpus Christi Feb. 28, 2013, pet. denied) (mem. op.) (citing *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam)). "Termination 'can never be justified without the most solid and substantial reasons.'" *In re N.L.D.*, 412 S.W.3d 810, 822 (Tex. App.—Texarkana 2013, no pet.) (quoting *Wiley v. Spratlan*, 543 S.W.2d 349, 352 (Tex. 1976)).

> In determining the best interests of the child, courts consider the following *Holley* factors:
>
> (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals, (6) the plans for the child by these individuals, (7) the stability of the home, (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent.

*Id.* at 818–19 (citing *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976)); *see In re E.N.C.*, 384 S.W.3d 796, 807 (Tex. 2012); *see also* TEX. FAM. CODE ANN. § 263.307(b). "There is no requirement that the party seeking termination prove all nine factors." *In re N.L.D.*, 412 S.W.3d at 819 (citing *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002)). Also, we may consider evidence used to support the grounds for termination of parental rights in the best-interest analysis. *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002).

We interpret Mother's complaint as a challenge to the factual sufficiency of the evidence. "In our review of factual sufficiency, we give due consideration to evidence the trial court could

have reasonably found to be clear and convincing." *In re L.E.S.*, 471 S.W.3d at 920 (citing *In re H.R.M.*, 209 S.W.3d 105, 109 (Tex. 2006) (per curiam)). "We consider only that evidence the fact-finder reasonably could have found to be clear and convincing and determine 'whether the evidence is such that a fact[-]finder could reasonably form a firm belief or conviction about the truth of the . . . allegations.'" *Id.* (quoting *In re H.R.M.*, 209 S.W.3d at 109 (quoting *In re C.H.*, 89 S.W.3d at 25) (citing *In re J.F.C.*, 96 S.W.3d 256, 264, 266 (Tex. 2002))). "If, in light of the entire record, the disputed evidence that a reasonable fact[-]finder could not have credited in favor of the finding is so significant that a fact[-]finder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id.* (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)). To make this determination, we undertake "an exacting review of the entire record with a healthy regard for the constitutional interests at stake." *Id.* (quoting *In re A.B.*, 437 S.W.3d at 503 (quoting *In re C.H.*, 89 S.W.3d at 26)).

"Despite the profound constitutional interests at stake in a proceeding to terminate parental rights, 'the rights of natural parents are not absolute; protection of the child is paramount.'" *Id.* (quoting *In re A.V.*, 113 S.W.3d 355, 361 (Tex. 2003) (quoting *In re J.W.T.*, 872 S.W.2d 189, 195 (Tex. 1994)) (citing *In re M.S.*, 115 S.W.3d 534, 547 (Tex. 2003))). "A child's emotional and physical interests must not be sacrificed merely to preserve parental rights." *Id.* (quoting *In re C.A.J.*, 459 S.W.3d 175, 179 (Tex. App.—Texarkana 2015, no pet.) (citing *In re C.H.*, 89 S.W.3d at 26)).

5

## II.    The Evidence at Trial

The evidence at trial showed that Mother was addicted to drugs. Alisha Santiago, the Department's conservatorship worker, testified about Mother's history with Child Protective Services (CPS). Mother admitted that she did not have custody of three other children and was jailed for failing to pay child support. Santiago said that CPS was involved in another pending case involving Mother after both she and her youngest child tested positive for amphetamine.

As for Brandon, Adam Brown, an investigator with the Department, said that he was previously removed from Mother's care because of her drug use and was supposed to be in the custody of his Father. Prior to the last removal of the child, Brown testified that he received an intake alleging that Brandon was living with Mother and multiple unknown roommates, that someone had sexually abused Brandon, and that he was acting out sexually in class by "rubbing his private areas on other girls' bottoms." Brown spoke with Brandon's schoolteacher, who said that Brandon started school nine weeks late, had accumulated sixteen absences, was behind academically, and had a lot of behavior problems.

Santiago testified that Brandon was found in unsafe conditions with people whom he did not know that were engaging in drug use. Mother admitted that she had left Brandon in the care of someone in a hotel room where syringes were found. Brown spoke with Brandon, who said that he was left alone by Mother with people he did not know. Brandon also said he had witnessed domestic violence between his parents, including an incident where Father tried to run Mother over with a car, and Brown found police reports confirming the domestic disturbance. According to Brown, Father was worried that Mother was back on drugs. Brown spoke with

Mother, who admitted that she had used methamphetamine daily for several months and marihuana on the day they spoke. Santiago believed that Mother's drug use, exposure to family violence, and late enrollment in school endangered Brandon's physical or emotional well-being.

Brandon was removed from Mother and returned to Father's care. Santiago testified about the court-ordered family service plans for Mother and said that she failed to complete a second ETCADA[2] assessment, in-patient drug treatment, parenting classes, and individual counseling; did not maintain stable employment; was homeless; and engaged in criminal activity. Santiago also testified that Mother failed to submit to random drug testing on nineteen occasions and tested positive for drugs during the pendency of the case.

Mother admitted that she had not completed her family service plan, including in-patient treatment for her methamphetamine addiction. She said that the treatment required her to stop taking Suboxone, a synthetic drug used to treat drug addiction, but that she could not "just stop taking it." Mother said that she had no transportation to make appointments and that the COVID-19 pandemic also affected the availability of services but admitted that she "got to a point that [she] got really discouraged." She admitted that she used methamphetamine the day before trial, had previously parented Brandon while under the influence of drugs, and could not provide the child with a positive home. Mother also said that she was living in a hotel room, received unemployment, and cleaned houses when she was able to, which was not very often. Although she could not verbalize the impact of her behavior on the child, Mother knew that her unstable living environment and drug use affected Brandon to some degree.

---

[2]ETCADA is the East Texas Council on Alcoholism and Drug Abuse.

7

According to Santiago, Mother loved Brandon, and the child knew who she was. Even so, Santiago said Mother did not regularly visit Brandon and failed to maintain significant contact with him. After her in-person visits were suspended, Santiago reported that Brandon would get upset and cry after telephone visits because he missed Mother and was upset about the circumstances. Santiago testified that telephone visits were suspended after the child said he no longer wished to speak to Mother and, as a result, Brandon did not speak to Mother for four months.

Mother said that she had a strong bond with Brandon and loved him. Father testified that Mother was "really sweet and a really good mother without the drugs" and made sure that Brandon was fed and taken to school. He could not say whether it was in Brandon's best interest for her parental rights to be terminated. Father also added that Brandon needed Mother, that Brandon would "want his daddy and his mother," and that the case had "been really hard for him." Robert Mayfield, a family friend, testified that Mother was an exemplary mom who loved Brandon and cared for him well. According to Mayfield, Mother and Brandon were inseparable and shared a tremendous bond.

Even so, Santiago testified that it was in Brandon's best interests that Mother's parental rights be terminated and that Father be granted sole managing conservatorship. Santiago said that Brandon was in the care of his Father since the pendency of the case and was attending school regularly, meeting his educational requirements, improving his behavior, and generally thriving. Grant Malone, a Court Appointed Special Advocate (CASA), testified that he had no

concerns about Father's parental ability and that it was in the child's best interest for Mother's parental rights to be terminated and for Father to be appointed sole managing conservator.

After hearing this evidence, the trial court terminated Mother's parental rights.

## III.    Analysis of the *Holley* Factors

As for the first *Holley* factor, there was evidence in the record that, although Brandon did not wish to visit with Mother over the phone, Mother and Brandon loved each other and had a strong bond.  Father testified that Brandon would want to be with Mother.  As a result, we find that the first *Holley* factor weighs against terminating Mother's parental rights.  Even so, we find the remaining factors weigh in favor of termination.

Considering the second factor, Brandon was an eight-year-old child who was behind academically, had witnessed domestic violence, and was experiencing behavioral issues, including acting out sexually in class.  Father testified that Brandon, though improving, was still having a hard time.  Even though the child's emotional needs were great, Mother had no stable job, no transportation, and minimal income.  Mother said at the time she testified, "Right now, I'm staying in . . . the Motel 6," but Santiago testified that she was homeless during the pendency of the case.  *See In re C.A.J.*, 459 S.W.3d 175, 183 (Tex. App.—Texarkana 2015, no pet.) ("A parent who lacks stability, income, and a home is unable to provide for a child's emotional and physical needs." (quoting *In re J.T.G.*, No. 14-10-00972-CV, 2012 WL 171012, at *17 (Tex. App.—Houston [14th Dist.] Jan. 19, 2012, pet. denied) (mem. op.))).  Mother knew that her unstable living environment and drug use affected Brandon and admitted that she could not

9

currently provide Brandon with a positive home. We find that the second *Holley* factor weighs in favor of termination.

In evaluating the third through eighth *Holley* factors, we recognize that "[e]vidence of past misconduct or neglect can be used to measure a parent's future conduct." *Id.* (quoting *In re I.R.K.N.*, No. 10-13-00455-CV, 2014 WL 2069281, at *7 (Tex. App.—Waco May 15, 2004, pet. denied) (mem. op.)); *Ray v. Burns*, 832 S.W.2d 431, 435 (Tex. App.—Waco 1992, no writ) ("Past is often prologue."). "A parent's inability to provide adequate care for her child, lack of parenting skills, and poor judgment may be considered when looking at the child's best interests." *N.L.D.*, 412 S.W.3d at 819 (citing *In re C.A.J.*, 122 S.W.3d 888, 893 (Tex. App.—Fort Worth 2003, no pet.)). "[P]arental drug abuse is also a factor to be considered in determining a child's best interests." *Id.* (citing *In re M.R.*, 243 S.W.3d 807, 820 (Tex. App.—Fort Worth 2007, no pet.)).

The record showed that Mother had a longtime drug addiction, which had led to her loss of custody of other children, including one who tested positive for amphetamine. Brandon was also previously removed from Mother due to her drug use. This time while in her care, Brandon was found in a hotel room with strangers who had syringes and, according to Santiago, were engaging in drug use. Mother, who told Brown that she used methamphetamine daily, admitted that she had parented Brandon while under the influence of drugs. Mother's lengthy history of drug abuse and poor decisions established that she had been a danger to Brandon, and Santiago testified that Mother's addiction and poor life choices would continue to endanger the child.

10

Also, Mother did not complete her family service plan, including parenting classes and in-patient substance-abuse treatment, and failed to avail herself of individual counseling because she became discouraged. She did not conquer her drug addiction, which was necessary to becoming a capable parent to Brandon. Mother's failure to ensure that Brandon attended school while in her care, use of drugs during the pendency of this case, including the day before trial, and failure to attend in-person visitations indicated that the existing parent-child relationship with Brandon was not a proper one. At the time of trial, Mother had no stable home and presented no cogent plan for Brandon's return. On the other hand, the Department showed that Father was a capable parent who cared well for Brandon. We find that *Holley* factors three through eight weigh in favor of terminating Mother's parental rights.

As for the last *Holley* factor, Mother cited transportation issues and COVID-19 as the reason for failing to complete some portions of the family service plan. Even so, Mother had no excuse for her continued methamphetamine use. Her testimony that she used the drug on the day before trial only served to emphasize her addiction.

Considering the *Holley* factors and viewing all the evidence, we conclude that the trial court could have reasonably formed a firm belief or conviction that termination of Mother's parental rights was in Brandon's best interests. *See* TEX. FAM. CODE ANN. § 161.001(b)(2). As a result, we overrule Mother's sole point of error.

## IV.     Conclusion

We affirm the trial court's judgment.


                                        Ralph K. Burgess
                                        Justice

Date Submitted:        October 29, 2021
Date Decided:          November 4, 2021